No. 01-492

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 97

STEPHEN C. PATTERSON,

       Petitioner and Respondent,

   v.

STATE OF MONTANA, DEPT. OF JUSTICE,
MOTOR VEHICLE DIVISION,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and for the County of Missoula,
                    The Honorable Edward P. McLean, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Gary Henricks, City Attorney's Office, Missoula, Montana

       For Respondent:

              Jeffrey Sutton, Attorney at Law, Great Falls, Montana

                        Submitted on Briefs:   January 31, 2002

                                    Decided:   May 9, 2002

Filed:

_____
                         Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Appellant State of Montana, Department of Justice, Motor Vehicle Division, appeals from an order issued by the Fourth Judicial District Court, Missoula County, which granted Respondent Stephen Patterson's petition to reinstate his driver's license.  We affirm.

¶2    The sole issue on appeal is whether the District Court erred when it reinstated Patterson's driver's license based on the State's failure to comply with an order compelling production of a 9-1-1 report.

## BACKGROUND

¶3    On December 14, 2000, the Missoula County 9-1-1 dispatch center received an anonymous report of an unconscious male slumped over the wheel of a vehicle.  Missoula City Police Officer Keith Hedges was dispatched to the scene.  At the scene, Officer Hedges found Patterson draped over the steering wheel of a running vehicle fast asleep.  Hedges  shut the vehicle off, verified that Patterson was breathing, and awoke him to inquire into his condition.  During the exchange, Hedges detected a strong odor of alcohol on Patterson's breath.  Hedges also observed that Patterson had bloodshot, glassy eyes and a slurred speech.

¶4    At that point, Hedges asked Patterson to exit the vehicle and perform various standardized field sobriety tests.  Following the completion of three tests, Hedges read a breath test advisory to Patterson and requested that Patterson submit a sample for a preliminary breath test.  Patterson refused to submit a breath

2

sample.  Consequently, Hedges  arrested Patterson for driving under the influence of alcohol and seized his driver's license.

¶5   On December 27, 2000, Patterson filed a notice of counsel, plea of not guilty, and request for jury trial.   On December 29, 2000, Patterson sent a letter to the State requesting a "transcribed copy of any 911 or dispatch calls related to this incident, including any calls received by anonymous tipsters."  The State subsequently responded that Patterson would have to independently obtain the report from the 9-1-1 dispatch center.  On January 2, 2001, Patterson filed a petition which challenged the suspension of his driver's license pursuant to § 61-8-403, MCA.  Ultimately, following a motion to continue, the District Court set the matter for a reinstatement hearing on March 15, 2001.  On March 6, 2001, Patterson served the State with discovery requests which sought, among other things, a transcribed copy of the 9-1-1 report.  Subsequently, the District Court continued the hearing to May 10, 2001.

¶6   On May 10, 2001, the parties appeared for the hearing.  Prior to the hearing, Patterson filed another motion to continue on the grounds that the State had not provided him with a transcribed copy of the 9-1-1 report.  The District Court heard arguments from both parties on the motion and continued the hearing to May 17, 2001. However, the District Court warned the State that if it failed to produce the report by May 17, 2001, the Court would reinstate Patterson's driver's license and dismiss the suspension.

¶7   On May 17, 2001, the parties appeared before the District Court for the reinstatement hearing.   The State informed the District Court that it was unable to obtain a copy of the 9-1-1

3

report.  Therefore, the District Court granted Patterson's petition for reinstatement of his driver's license.  The State appeals the District Court's order of reinstatement.

STANDARD OF REVIEW

¶8    This Court generally defers to the decision of a trial court regarding sanctions for failure to comply with discovery procedures because the trial court is in the best position to know whether parties are disregarding the rights of opposing parties in the course of litigation and which sanctions for such conduct are most appropriate. *McKenzie v. Scheeler* (1997), 285 Mont. 500, 506, 949 P.2d 1168, 1172. As a result, we review a district court's imposition of sanctions for failure to comply with discovery procedures to determine whether the court abused its discretion. *McKenzie*, 285 Mont. at 506, 949 P.2d at 1172.

## DISCUSSION

¶9    Did the District Court err when it reinstated Patterson's driver's license based on the State's failure to comply with an order compelling production of a 9-1-1 report?

¶10   On appeal, the State argues that § 61-8-403, MCA, explicitly confines a driver's license reinstatement inquiry to enumerated issues. The State insists that the requested 9-1-1 report contains information beyond the purview of those specified issues. Therefore, according to the State, the District Court erred in granting Patterson's petition, on discovery grounds, because Patterson failed to show that the report contained relevant information essential to the issues at hand. Further, the State suggests that the District Court abused its discretion in levying the ultimate sanction, i.e., the equivalent of a dismissal, as Patterson was not prejudiced by the State's inability to produce the requested information.

¶11  This Court has consistently stated that a party's abuse of discovery procedures which results in unnecessary delay of a case should not be dealt with leniently; transgressors should be punished rather than encouraged repeatedly to cooperate in the discovery process. *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 87, 293 Mont. 97, ¶ 87, 973 P.2d 818, ¶ 87.  Concerns related to crowded dockets and the responsibility to maintain fair and efficient judicial administration have shifted the traditional reluctance to impose discovery-related sanctions to a judicial intolerance of discovery abuses. *Smith v. Butte-Silver Bow County* (1996), 276 Mont. 329, 332, 916 P.2d 91, 92.  Thus, the imposition of sanctions for failure to comply with discovery procedures is regarded with favor. *McKenzie*, 285 Mont. at 506, 949 P.2d at 1172.

¶12  We agree with the State that § 61-8-403, MCA, limits a district court's inquiry at a driver's license reinstatement proceeding to certain enumerated issues.  Indeed, we have reaffirmed this proposition on numerous occasions. *See, e.g., State v. Krause*, 2002 MT 63, ¶ 26, 309 Mont. 174, ¶ 26, ___ P.3d ___, ¶ 26; *Hulse v. State, Dep't of Justice*, 1998 MT 108, ¶ 11, 289 Mont. 1, ¶ 11, 961 P.2d 75, ¶ 11; *Thompson v. Department of Justice* (1994), 264 Mont. 372, 376, 871 P.2d 1333, 1336.  However, a hearing held pursuant to § 61-8-403, MCA, is a civil proceeding, and, therefore, must be conducted in accordance with the Montana Rules of Civil Procedure. *See Thompson*, 264 Mont. at 376, 871 P.2d at 1335 and  Rule 1, M.R.Civ.P.

¶13 Rule 34(a), M.R.Civ.P., provides that any party may serve on any other party a request to produce documents or any tangible things which constitute or contain matters within the scope of Rule 26(b), M.R.Civ.P. Rule 26(b)(1), M.R.Civ.P., authorizes a party to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." Finally, Rule 34(b), M.R.Civ.P., provides:

> The party upon whom the request is served shall serve a written response within 30 days after the service of the request, except that a defendant may serve a response within 45 days after service of the summons and complaint upon that defendant . . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated.

¶14 On March 6, 2001, Patterson served the State with a number of interrogatories, requests for admission, and requests for production, which included the following:

> REQUEST FOR PRODUCTION NO. 12.: Please produce a transcribed copy of all 911, dispatch, or any other radio broadcast communications made or received by any law enforcement official, medical personnel, fire and rescue personnel, or citizen informant in regards to this matter.

On April 5, 2001, the State answered the above request as follows:

> RESPONSE: The [State] has requested that 911 produce a copy of the 911 tape prepared in relation to [Patterson's] arrest. If and when it is made available to the City Attorney's Office, a copy of the tape will be made available for [Patterson's] inspection, review, and copying. If [Patterson] chooses to make a transcript of

7

the tape after it has been made available to [Patterson], the [State] has no objection to [Patterson] doing so.

¶15 The rules of civil procedure are premised upon a policy of liberal and broad discovery. *Burlington Northern v. District Court* (1989), 239 Mont. 207, 216, 779 P.2d 885, 891. Therefore, we must begin with the presumption that the 9-1-1 report was relevant, discoverable information. If, as the State now suggests, Patterson requested irrelevant information outside the scope of the reinstatement hearing, the State had the affirmative obligation to object to the request or file a motion with the District Court to limit discovery. The State did neither. As such, the District Court also had to proceed under the assumption that Patterson appropriately requested discoverable information pursuant to Rule 26(b), M.R.Civ.P.

¶16 As of May 10, 2001, the date purportedly set for the reinstatement hearing, the State had not produced a copy of the 9-1-1 report. Therefore, on that date, the District Court held a telephonic conference whereby it informed the parties that it would continue the hearing until May 17, 2001. Thus, the District Court provided the State with one more opportunity to comply with the request. However, the District Court warned that if "the State has not furnished a copy of the call to 911 by that time, I'll reinstate the driver's permit and dismiss the suspension." On May 17, 2001, the State conceded that it could not locate a tape of the 9-1-1 call. Accordingly, the District Court granted Patterson's petition for reinstatement of his driver's license.

¶17 The District Court's order reinstating Patterson's driver's license cited no authority for its ultimate determination. It simply granted Patterson's petition because the State "failed to comply with the Court's Order . . . requiring full discovery disclosure by the time of this hearing." Essentially, the District Court sanctioned the State for its shortcomings by entering a default judgment in favor of Patterson. Therefore, we presume from the language utilized by the Court, that it acted pursuant to Rule 37(b)(2), M.R.Civ.P., and, for purposes of this appeal, we will evaluate the District Court's determination accordingly.

¶18 Rule 37(b)(2), M.R.Civ.P., provides:

> Sanctions by court in which action is pending. If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just and among others the following:
>
> . . . .
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Clearly, on May 10, 2001, the District Court ordered the State to produce the 9-1-1 report. Further, on May 17, 2001, the State conceded that it could not produce the report. Therefore, the District Court was justified in levying sanctions against the State in accordance with Rule 37(b)(2)(C), M.R.Civ.P. However, the District Court was authorized to enter such orders as were "just." Consequently, for purposes of this appeal, the inquiry hinges on

9

whether the District Court abused its discretion in levying the sanction it did.

¶19 Subject to the remedial purposes justifying Rule 37, M.R.Civ.P., sanctions for discovery abuses and our aforementioned deferential policy regarding the imposition of the same, we have identified three factors which we consider in determining whether a sanction constitutes an abuse of discretion. We look to: 1) whether the consequences imposed by the sanctions relate to the extent and nature of the actual discovery abuse; 2) the extent of the prejudice to the opposing party which resulted from the discovery abuse; and 3) whether the court expressly warned the abusing party of the consequences. *Maloney v. Home and Investment Center, Inc.,* 2000 MT 34, ¶ 35, 298 Mont. 213, ¶ 35, 994 P.2d 1124, ¶ 35.

¶20 At the core of our analysis lies the above mentioned presumption of relevance surrounding Patterson's request for the 9-1-1 report, given the State's failure to object otherwise. The State insists on appeal that the report contained information beyond the scope of the reinstatement hearing, and, therefore, contends that Patterson suffered no prejudice from its failure to produce. However, due to the obligations placed upon the parties by the Montana Rules of Civil Procedure, for purposes of this appeal, we must treat the requested report as relevant information.

¶21 As such, the State's failure to relinquish the relevant information certainly compromised Patterson's ability to prepare and present an informed challenge at the impending proceeding.

10

Common sense and fundamental fairness suggest that no party should be forced to proceed under such a "cloud of uncertainty." Consequently, we conclude that the reinstatement of Patterson's driver's license relates to the extent and nature of the actual discovery abuse. Further, the State's inability to provide the information essentially suspended the case's progress. When a party's failure to comply with discovery procedures effectively halts the discovery process, it results in impermissible prejudice to the opposing party. *McKenzie*, 285 Mont. at 516, 949 P.2d at 1177. Therefore, the State's disregard for the discovery process and procedures was, in itself, prejudicial to Patterson. Finally, the District Court expressly warned the State of the potential consequences for noncompliance with its order.

¶22 We do not disagree with the dissent's relevance analysis and, in all likelihood, the case would have compelled a different result had the State propounded such a position, as prescribed by the Montana Rules of Civil Procedure. However, the State did not proceed in such a manner. Consequently, we do not share the dissent's sentiment that the discovery analysis diverted the District Court's or this Court's attention from any underlying substantive issue.

¶23 In its response to Patterson's request for production, the State claimed that it would provide Patterson with a copy of the report "[i]f and when it is made available to the City Attorney's Office." Simply put, the State failed to assert a timely objection to Patterson's request for production with the District Court. On

11

appeal, the State finally raises the relevance issue and requests that we come to its aid via a finding of an abuse of discretion. The District Court did not contemplate the relevance argument, absent notification from the parties, and we will not allow the State to avail itself of a position that was not properly preserved. The record before the District Court simply revealed that the State had not divulged presumably discoverable information in the face of a judicial order to compel such production. In these days of crowded dockets and strained judicial resources, practitioners must abide by the applicable rules of procedure for courts to maintain some semblance of order. As litigants often enjoy the benefits and protections afforded by the Montana Rules of Civil Procedure, they should likewise be prepared to accept the consequences for noncompliance. Accordingly, we hold that the District Court did not abuse its discretion when it granted Patterson's petition for reinstatement of his driver's license.

¶24  Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER

Justice James C. Nelson dissents.

¶25     I dissent from the Court's decision.  The discovery issue is nothing but a red herring.  The 9-1-1 tape was irrelevant under the undisputed facts here.

¶26     The proceeding at issue involved Patterson's challenge to the suspension of his driver's license under § 61-8-403, MCA. It is well settled that under this statute the trial court's review is limited to three issues: (1) whether a peace officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a vehicle upon the ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two; (2) whether the person was placed under arrest; and (3) whether the person refused to submit to the test for the presence of alcohol or drugs in the person's body.  *Gentry v. State, Dept. of Justice* (1997), 282 Mont. 491, 495, 938 P.2d 693, 695.[1]

---

[1]   The 1999 version of the Montana Code applies in the case *sub judice*.  The version of the code at issue in *Gentry* was the 1995 version.  While the language of § 61-8-403(4)(a), MCA (1995), varies somewhat from § 61-8-403(4)(a), MCA (1999), the basic three elements of inquiry articulated in *Gentry* remain the same--at least as applied in the instant case.

13

¶27     In the case at bar, there are no disputed questions of fact as to (2) and (3). *See* ¶¶ 3-4 of the majority opinion. That leaves (1) as the only issue for the trial court's review.

¶28 Typically, the sort of case before us here starts with the stop of the accused's vehicle by a police officer based on a traffic violation or erratic driving. The accused characteristically claims that there was no particularized suspicion or reasonable grounds for the stop. *See, for example, Grindeland v. State,* 2001 MT 196, ¶ 9, 306 Mont. 262, ¶ 9, 32 P.3d 767, ¶ 9. Indeed, we have held that in a hearing to reinstate a driver's license, the trial court must *first* look to whether a peace officer had a "particularized suspicion" for making the initial stop. *Morris v. State*, 2001 MT 13, ¶ 8, 304 Mont. 114, ¶ 8, 18 P.3d 1003, ¶ 8. Keeping that premise in mind, the only possible relevance that the 9-1-1 tape would have had to the proceedings at bar was whether the arresting officer had reasonable grounds in "stopping" Patterson.

¶29 However, here, as ¶ 3 of the Court's opinion reflects, there was no initial stop. Patterson was passed out, drunk, slumped over the steering wheel, with his vehicle running. The record also reflects that Patterson's vehicle was parked on a public street--North Pattee Street--in Missoula.

¶30 Importantly, Officer Hedges did nothing as a result of the 9-1-1 tip that he could not have done without the tip. Had he simply come upon a vehicle parked on a public street, with the motor running and the driver passed out over the steering wheel, Officer Hedges would have had the authority--in fact, a duty--to

14

investigate further, whether based on reasonable suspicion that the driver was intoxicated, *see State v. Morris* (1988), 230 Mont. 311, 749 P.2d 1379, or under the "welfare check" doctrine, *see State v. Boyer*, 2002 MT 33, ¶ 11, 308 Mont. 276, ¶ 11, 42 P.3d 771, ¶ 11 (citing *Grinde v. State* (1991), 249 Mont. 77, 81, 813 P.2d 473, 476, *overruled on other grounds by Bush v. Montana DOJ, Motor Vehicle Div.,* 1998 MT 270, 291 Mont. 359, 968 P.2d 716).

¶31  While I do not condone the State's sloppy discovery practice and while, in some other case, the 9-1-1 tape may have been crucial in determining whether the initial stop was based on particularized suspicion (*compare State v. Pratt* (1997), 286 Mont. 156, 951 P.2d 37),  in the context of this case, the 9-1-1 tape was irrelevant. Why or how Officer Hedges came to be at Patterson's vehicle matters not at all since there was no stop.  Our case law permitted Officer Hedges to do exactly what he did, regardless of what prompted his appearance at Patterson's vehicle.

¶32  I agree that sanctions are an important method of enforcing discovery obligations in civil and criminal cases alike.  However, punishing a party for failing to produce irrelevant evidence is nothing but a sanction for sanction's sake and has no legitimate purpose.

¶33  On the undisputed facts here, I would reverse, vacate the trial court's decision, and order Patterson's driver's license suspension to be reinstated.  I dissent from our failure to do so.

/S/ JAMES C. NELSON

Justices W. William Leaphart and Jim Rice concur in the foregoing dissent.

15

/S/ W. WILLIAM LEAPHART

/S/ JIM RICE