No. 04-670

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 43

CLARICE RICHARDSON,

        Plaintiff and Appellant,

   v.

STATE OF MONTANA,

        Defendant and Respondent.

APPEAL FROM:    The District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DV 2002-209,
Honorable John W. Whelan, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Lee Bruner, Donald C. Robinson, Poore Roth & Robinson,
Butte, Montana

       For Respondent:

           Gary L. Walton, Attorney at Law, Butte, Montana

Submitted on Briefs:  August 30, 2005

Decided:  March 1, 2006

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Clarice Richardson (Richardson) filed a personal injury action against the State of Montana (State) in the District Court of the Second Judicial District, Silver Bow County. After the jury rendered a defense verdict and the court entered a Judgment in favor of the State, Richardson filed a Motion requesting either an amended judgment or a new trial based on the State's abuse of the discovery process. Alternatively, Richardson sought a new trial based on the District Court's inconsistent rulings on the admission of evidence and argument regarding subsequent remedial measures. Richardson now appeals from the District Court's denial of the Motion. We reverse and remand for entry of an order vacating the Judgment in favor of the State, and for entry of default judgment against the State on the issue of liability, as a sanction for its abuse of the discovery process. Additionally, we remand for further proceedings to determine damages.

¶2      While Richardson presents several arguments on appeal, we address only the following issue, which we find dispositive:   Did the District Court err in denying Richardson's Motion to Amend the Judgment based on the State's conduct during discovery?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3      On October 26, 2001, Richardson attended a water aerobics class conducted in the pool at the Health, Physical Education and Recreation facility (HPER facility) on the campus of the Montana College of Technology located in Butte. Richardson was eighty-four years old at the time, and she attended the class along with other elderly participants. At the conclusion of the class, Richardson entered the women's locker room of the HPER facility

2

where she fell on the smooth trowelled concrete floor and suffered a severe injury to her hip, requiring surgical reconstruction and months of rehabilitation.

¶4    In the fall of 2002, Richardson filed a Complaint against the State, which owns and operates the Montana College of Technology.  She alleged, *inter alia*, that the State had left the locker room floor in an "unrepaired, unmarked, dangerous condition," ignoring the high probability that she would be injured as a result; that the State knew of this danger prior to her fall, but nonetheless failed to provide a warning or correct the danger; that she slipped and fell as a result of the State's failure to correct this dangerous condition and its failure to provide a warning; and that she suffered a severe injury as a result of the fall.  Upon these contentions, Richardson sought recovery for her resulting medical expenses, as well as pain and suffering.

¶5    In April of 2003, Richardson served her first discovery requests on the State, seeking information regarding various subjects relevant to the lawsuit.  Following the State's response, Richardson served her second discovery requests on the State on October 2, 2003. This included the discovery requests of primary importance in this appeal--an interrogatory and a request for production seeking information regarding other slip and fall accidents at the HPER facility.  The other requests in this second stage of discovery primarily sought information regarding any warnings provided by the State about the floor in "the area of Plaintiff's fall," any protective measures which the State may have taken to prevent slip and fall injuries in that area, and information regarding the State's maintenance of the floor and the ventilation system in that area.

3

¶6 The State refused to answer all ten interrogatories in this second set of discovery requests, repeatedly claiming that Richardson was seeking irrelevant information, that the requests were not reasonably calculated to lead to the discovery of admissible evidence, and that the requests were vague and ambiguous. Further, the State's counsel offered no legally recognized response to four of Richardson's six requests for production. Rather than answering or objecting to these requests, as required by Rule 34(b), M.R.Civ.P., the State simply labeled them as "Not applicable," providing no further explanation.

¶7 Richardson then sent a letter to the State, requesting an adequate response. After the State again refused to answer, Richardson filed a Motion to Compel Discovery in February of 2004, asking the District Court to require that the State provide answers, and seeking sanctions against the State.

¶8 Thereafter, while still withholding the information regarding other falls, the State filed a Motion for Summary Judgment, arguing Richardson could not demonstrate that the State should have anticipated her injury. The State also filed a Motion *in Limine* seeking to prevent Richardson from making various arguments regarding the State's installation of "grip strips" in the HPER facility. In its brief supporting this Motion, the State mentioned that it had begun installing "grip strips" in the HPER facility "shortly before Richardson's fall following a reported slip by another patron." The brief provided no details regarding this incident. Nonetheless, the State's counsel continued to withhold the information regarding other falls, maintaining, *inter alia*, that it was not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

4

¶9 In its brief opposing Richardson's Motion to Compel Discovery, the State attacked Richardson's numerous requests seeking information about "the area of Plaintiff's fall," asserting that the term "area" rendered the requests too vague and ambiguous to answer. At the hearing on Richardson's Motion, held on April 12, 2004, the State again argued that the term "area" was ambiguous. Additionally, the State continued to contest Richardson's requests for information regarding other falls. Eventually, however, the State's counsel voluntarily conceded during his argument that he could disclose the information regarding other falls in the women's locker room.

¶10 The District Court stated that Richardson's requests could have been more specific, but ultimately characterized the conflict as a dispute over "little nuances" and concluded "All the questions have to be answered. There's no question about that." Specifically addressing Richardson's requests for information regarding other falls in the HPER facility, the court stated that this information was discoverable and reminded counsel that a ruling on the admissibility of such evidence would be made at trial. Finally, in ordering the State to provide answers, the court offered to consider any objections regarding particular requests which the State considered "not answerable." Despite its previous claims that Richardson's requests were "vague and ambiguous," the State did not respond to this offer.

¶11 The next day, the District Court issued an Order granting Richardson's Motion to Compel Discovery, but denying her request for sanctions. This Order required Richardson to re-serve her discovery requests with "more clarity," but provided no specific instruction in

this regard. Finally, the Order required the State to respond to Richardson's discovery requests within ten days of service.

¶12 On April 19, 2004, Richardson re-served her discovery requests on the State. In these requests, Richardson replaced the phrase "the area of Plaintiff's fall" with "the women's locker room." As for Richardson's interrogatory and request for production seeking information regarding other falls, she re-served these requests without amending them, in accordance with the District Court's comments prompting the State to provide the information which Richardson had originally requested.

¶13 Richardson received the State's responses on May 7, 2004. This time, the State provided answers to most of Richardson's requests. However, in direct violation of the District Court's Order, the State did not answer Richardson's interrogatory and request for production seeking information regarding other falls in the HPER facility. Once again, Richardson's counsel contacted the State's counsel, seeking answers. While still withholding the information regarding other falls, in violation of the court's Order, the State filed a Motion on May 11, 2004, asking the court to exclude evidence and argument regarding other falls. In its supporting brief, the State asked that the court grant this Motion because, *inter alia*, Richardson's expert had not tested the other areas of the locker room floor where other women had fallen. On May 12, 2004, Richardson filed her Preliminary Pre-trial Conference Brief, informing the District Court that the State had not yet responded to her discovery requests regarding other falls.

6

¶14    Then, on May 13, 2004, over seven months after Richardson's initial request, over two months after discovery had closed, and a mere eleven days before trial, Richardson finally received a response to her originally submitted interrogatory and request for production regarding other falls at the HPER facility. This response disclosed that in addition to Richardson's fall, eight other falls had occurred in the HPER facility during the several years previous and subsequent to Richardson's fall. Five of these falls occurred in the women's locker room, resulting in hip and back injuries, among others.

¶15    Along with a brief description of these eight other falls and the resulting injuries, the State provided seven incident reports. Richardson informed the District Court that "[t]he documents provided were poor copies, and legible copies had to then be requested of the State further consuming precious days before trial." The State does not contest this assertion. Moreover, the State's description of one of the incidents was inaccurate. Dorothy Honeychurch slipped and fell on the smooth trowelled concrete floor of the women's locker room less than a month before Richardson's accident. The State reported that Honeychurch claimed to have "slipped on a rubber mat." However, the incident report states that she "stepped off the mat a couple of steps" before she slipped and fell.

¶16    Another one of the women who slipped and fell in the locker room was Maire Pearson, the instructor of the water aerobics class. Her fall occurred just nine days before Richardson's fall. As a result, Pearson filled out an incident report explaining the circumstances of her fall and stating that she had injured her back. However, at her

7

deposition Pearson testified that she did not know of any other falls which resulted in injury, other than Richardson's.

¶17 The District Court held a four day trial beginning on May 24, 2004. Evidence regarding other falls was admitted and discussed at length. By a vote of eight to four, the jury found that the State was not negligent. After the District Court rendered its Judgment in favor of the State, Richardson filed a Motion requesting that the court amend the Judgment by entering a default judgment on the issue of liability against the State, as a sanction for its discovery abuse. Alternatively, Richardson requested a new trial based on the State's discovery abuse. Richardson also sought a new trial based on the District Court's inconsistent rulings on the admission of evidence and argument regarding subsequent remedial measures. The District Court denied Richardson's Motion in its entirety.

¶18 On appeal, Richardson argues that the District Court should have granted the Motion by imposing a default judgment against the State. Alternatively, Richardson argues for a new trial with sufficient time for further discovery. Finally, Richardson also argues for a new trial based on the District Court's inconsistent rulings regarding the issue of subsequent remedial measures. We need not address the latter two arguments because, as explained below, the State's discovery abuses warrant imposition of a default judgment on the issue of liability.

## DISCUSSION

¶19 **Did the District Court err in denying Richardson's Motion to Amend the Judgment based on the State's conduct during discovery?**

¶20     Richardson argues that the State's objections to her discovery requests were without merit and were not made in good faith. Further, Richardson argues that this discovery abuse put her at a severe disadvantage. She notes that when this information was finally disclosed eleven days before trial, her counsel and her experts did not have time to adequately investigate the circumstances surrounding the other falls. As a result, Richardson argues, she was not able to properly prepare for trial and the State unfairly benefited by delaying discovery of this information. Thus, Richardson argues that the State's conduct was an abuse of the discovery process which warranted the imposition of a default judgment on the issue of liability. In response, the State asks that we defer to the District Court's ruling, arguing that the court did not abuse its discretion in denying Richardson's Motion to Amend the Judgment. However, the State provides no explanation as to how its objections to Richardson's discovery requests could have been proper.

¶21     We review a district court's decision regarding the amendment of a judgment, as well as a decision regarding the imposition of sanctions for alleged discovery abuse, to determine whether the court abused its discretion. *Estate of Nielsen v. Pardis* (1994), 265 Mont. 470, 478, 878 P.2d 234, 238; *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 26, 303 Mont. 274, ¶ 26, 16 P.3d 1002, ¶ 26. In doing so, we generally defer to the district court because it is in the best position to determine both whether the party in question has disregarded the opponent's rights, and which sanctions are most appropriate. *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 86, 293 Mont. 97, ¶ 86, 973 P.2d 818, ¶ 86 (citing *McKenzie v. Scheeler* (1997), 285 Mont. 500, 506, 949 P.2d 1168, 1172).

9

¶22     "The purpose of discovery is to promote the ascertainment of truth and the ultimate disposition of the lawsuit in accordance therewith.  Discovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation."  *Massaro v. Dunham* (1979), 184 Mont. 400, 405, 603 P.2d 249, 252 (citing *Hickman v. Taylor* (1947), 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451).  Modern instruments of discovery, together with pre-trial procedures, "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  *United States v. Procter & Gamble Co.* (1958), 356 U.S. 677, 682, 78 S.Ct. 983, 986-87, 2 L.Ed.2d 1077 (citing *Hickman*, 329 U.S. at 501, 67 S.Ct. at 388-89).

¶23     The record before this Court clearly demonstrates that the State improperly concealed the evidence of other falls until the eve of trial by asserting baseless objections in response to Richardson's second set of discovery requests.  This evidence was highly relevant and probative in the case, and it ultimately became a focal point of the trial.  Further compounding this impropriety, the State aggressively pressed the advantage which it gained by this belated disclosure, repeatedly exploiting Richardson's lack of knowledge regarding the other falls and her inability to properly investigate and develop that evidence for trial.  In short, the State's actions directly contravened the express purpose of discovery and severely undermined the integrity of the litigation.

¶24     Rule 26(b)(1), M.R.Civ.P., provides:

Parties may obtain discovery regarding any matter, not privileged, which is

10

relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 33, M.R.Civ.P., authorizes the use of interrogatories for the purpose of pre-trial discovery from an adverse party. This rule is liberally construed to make *all relevant facts* available to parties in advance of trial and to reduce the possibilities of surprise and unfair advantage. *Perdue v. Gagnon Farms, Inc.*, 2003 MT 47, ¶ 15, 314 Mont. 303, ¶ 15, 65 P.3d 570, ¶ 15 (citing *Eagle Ridge Ranch Ltd. Partnership v. Park County* (1997), 283 Mont. 62, 66, 938 P.2d 1342, 1344).

¶25    Richardson submitted the following interrogatory in her second discovery requests:

> INTERROGATORY No. 26: Please identify any other falls occurring anywhere in the HPER facility occurring at any time up to the date of these requests, including the date, location, identity of the victim, and injuries sustained in the fall.

Given the nature of Richardson's claim against the State, the information she sought regarding other falls was clearly relevant in this case. Her Complaint alleged, *inter alia*, that the State "was aware of the dangerous condition of the floor in the area where Plaintiff fell but did nothing to warn Plaintiff or correct the known danger." As the State acknowledged in its Motion for Summary Judgment, one of the primary issues in the case was whether the State should have anticipated her injury. The State quoted our holding in another case involving a slip and fall accident:

11

The possessor of the premises is not liable to persons foreseeably upon the premises for physical harm caused to them by any activity or condition on the premises whose danger is known or obvious to them, *unless the possessor should anticipate the harm* despite such knowledge or obviousness.

*Richardson v. Corvallis Pub. School Dist.* (1997), 286 Mont. 309, 321, 950 P.2d 748, 755-56 (emphasis added).

¶26    Our decision in *Kissock v. Butte Convalescent Center*, 1999 MT 322, 297 Mont. 307, 992 P.2d 1271, another case involving a slip and fall accident, clearly demonstrates that the information Richardson sought regarding other falls was not only relevant, but potentially admissible at trial.  In *Kissock* we observed that "although evidence of prior accidents is not admissible for the purpose of proving negligence, such evidence is nevertheless admissible to show the existence of a danger or defect and notice or knowledge thereof."  *Kissock*, ¶ 15 (citing *Runkle v. Burlington Northern* (1980), 188 Mont. 286, 292, 613 P.2d 982, 986; *Schmidt v. Washington Contractors Group, Inc.*, 1998 MT 194, ¶ 25, 290 Mont. 276, ¶ 25, 964 P.2d 34, ¶ 25).  We also stated that "[e]vidence of prior, similar accidents can have significant probative force bearing upon the question of the reasonableness of defendant's conduct."  *Kissock*, ¶ 16.

¶27    We note that the State's counsel in this case also represented the defendant in *Kissock*, unsuccessfully arguing that the trial court had properly excluded evidence of another slip and fall accident.  Despite our holdings in *Kissock*, counsel refused to disclose the information regarding other falls, claiming, *inter alia*, that it was "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."

12

¶28 Rule 401, M.R.Evid., defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This rule, together with *Richardson* and *Kissock,* demonstrates the impropriety of the State's relevance objection. The evidence of other falls was clearly relevant to the issues of whether a danger did in fact exist, whether the State had knowledge of the danger, whether the State's conduct was reasonable in light of any such knowledge, and whether the State should have anticipated Richardson's injury.

¶29 Even if the State's counsel believed in good faith that the evidence of other falls would not be admitted at trial, the State was not entitled to conceal it under the guise of a relevance objection and thereby deprive Richardson of the opportunity to evaluate the evidence and determine whether to seek its admission. Moreover, the State was not entitled to preempt the District Court's discretion regarding the admission of such evidence. Yet, the State attempted to do so, despite the fact that it cited *Kissock* in a pre-trial Motion for the proposition that district courts have "broad discretion regarding the admission of evidence of other falls." *See Kissock*, ¶ 14.

¶30 Rule 26(b)(1), M.R.Civ.P., states "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Here, the evidence of other falls clearly could have led to the discovery of admissible evidence--i.e., it would have provided Richardson the identity of other individuals who had fallen and therefore could have

13

provided relevant testimony. We find no merit in the State's objection that the evidence of other falls was not reasonably calculated to lead to the discovery of admissible evidence.

¶31 Perhaps the clearest indication of the impropriety of the relevance objection came directly from the State itself. Before the hearing on Richardson's Motion to Compel Discovery, the State filed a Motion seeking, *inter alia*, to prevent Richardson from making various arguments regarding the State's installation of "grip strips" in the HPER facility. In its supporting brief, the State noted that it had begun installing "grip strips" in the HPER facility "shortly before Richardson's fall following a reported slip by another patron." The brief provided no details regarding this incident. However, the fact that this incident was significant enough to warrant a place in the State's brief demonstrates both that the evidence of other falls was indeed relevant, and that the State saw the evidence as relevant. Nonetheless, the State continued to withhold the information regarding other falls, maintaining that it was not relevant and not reasonably calculated to lead to the discovery of admissible evidence.

¶32 Given the States voluntary reference to another fall during the pre-trial proceedings, together with the State's acknowledgment that it could be held liable if it should have anticipated Richardson's injury, as well as counsel's direct involvement in *Kissock* wherein we held that evidence of other falls is admissible for certain purposes,[1] we can only conclude that the relevance objection was not asserted in good faith. This conclusion is reinforced by

---

[1] Of course, we are not suggesting that an attorney may be excused for asserting an improper objection if he or she does not know the relevant law. Rule 26(g), M.R.Civ.P., requires

14

the fact that the State, in its brief before this Court, does not even attempt to justify its objection that the evidence of other falls was "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."

¶33    In response to four of Richardson's remaining nine interrogatories, the State asserted this same objection. These interrogatories sought, *inter alia*, information regarding any protective measures which the State may have taken to prevent slip and fall injuries, and information regarding any changes made to the floor and the ventilation system in the area of Richardson's fall.

¶34    For example, Richardson submitted the following interrogatory: "Please identify any protective measures taken prior to, or after Plaintiff's fall to prevent injuries from slipping on the floor, including the date of commencement of the actions to institute the protective measures, the date of completion of said project, and a detailed description of the actions taken." In response, the State again refused to provide an answer, claiming that the information sought was "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence."

¶35    Of course, information regarding any protective measures the State may have taken to prevent slip and fall accidents was highly relevant in determining whether the State should have anticipated Richardson's injury. Indeed, the State's installation of "grip strips" in certain areas of the women's locker room was discussed at length during the trial. We note that the State was entitled to argue against the admission of evidence of subsequent remedial

counsel to conduct a reasonable inquiry into the law before objecting to a discovery request.

measures at trial pursuant to Rule 407, M.R.Evid., which precludes the use of such evidence for the purpose of proving negligence. However, this rule does not preclude the admission of such evidence when it is offered for other purposes, such as proving the feasibility of precautionary measures. More importantly, this evidentiary rule does not preclude the discovery of subsequent remedial measures. Accordingly, the State was not entitled to withhold relevant evidence of subsequent remedial measures during discovery pursuant to Rule 407, M.R.Evid.

¶36 We conclude that the State's repeated claim that the information sought was "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence" was a plain abuse of the discovery process. Moreover, the indefensible nature of these objections is underscored by the fact that the State provides this Court with no explanation as to how any of these objections could have been meritorious.

¶37 In refusing to answer Richardson's interrogatory seeking information regarding other falls, the State also claimed "this interrogatory is overly broad, oppressive and burdensome." We find no support for this objection in the record. When the State finally answered this interrogatory, it provided one page with a few sentences summarizing each of the other falls. As these summaries were merely a brief recitation of the information contained in the incident reports, it appears that the State was not burdened with any extensive investigation or compilation work in providing the information. Further, the State provides no explanation as to how the preparation of these summaries could possibly be considered "oppressive and burdensome."

16

¶38    Nor does the State explain how this interrogatory was "overly broad."  We note that during the hearing on Richardson's Motion to Compel Discovery the State seemed to suggest that Richardson's interrogatory was overly broad because it sought information regarding falls throughout the HPER facility, not just falls in the women's locker room.  Of course, the State was entitled to seek exclusion, for certain purposes, of any falls which occurred under circumstances different than those of Richardson's fall.  However, the State was not entitled to withhold the information regarding all slip and fall accidents simply because some of them occurred outside the women's locker room.

¶39    Finally, the State refused to provide information regarding other falls based on its claim that Richardson had exceeded the number of interrogatories which may be served without leave of the court.  The State also asserted this objection in refusing to answer three other interrogatories which sought information regarding any protective measures the State may have taken, any warnings the State may have provided, and any changes made to the floor or ventilation system in the locker room since its original construction.

¶40    Rule 33(a), M.R.Civ.P., provides:

> Unless otherwise ordered or stipulated, no party may serve on any other party more than 50 interrogatories in the aggregate. Each subpart shall be counted as a separate interrogatory. Additional interrogatories may be submitted for good cause only by leave of court.

In opposing Richardson's Motion to Compel Discovery, the State asserted that based on the number of subparts in Richardson's interrogatories, "beginning with Interrogatory No. 23, Richardson had exceeded the fifty interrogatory limitation."  However, the State provided no

explanation as to how it had determined the number of subparts in Richardson's interrogatories. Nor does the State provide any such explanation on appeal. Having examined Richardson's interrogatories, we find no basis for this objection.

¶41 Richardson's first discovery request contained a set of interrogatories which her counsel numbered from one to sixteen. Richardson's counsel numbered her second set of interrogatories from seventeen to twenty-six. Several of the interrogatories in Richardson's first discovery requests contained two sentences, while two of these interrogatories contained three sentences. However, even if we count each sentence in all these requests as a separate interrogatory,[2] Richardson did not exceed fifty interrogatories.

¶42 It appears that the State may have counted separate clauses within the interrogatories as "subparts," and therefore, separate interrogatories. For example, the State may have counted Richardson's request for the names of all expert witnesses to be called at trial, the subject matter about which the witnesses would testify, and the literature upon which the experts would rely, as three separate interrogatories. However, this interrogatory was merely one sentence with multiple clauses, as were nearly all of Richardson's requests.

¶43 While Rule 33(a), M.R.Civ.P., does not define the term "subpart," common sense dictates that one sentence containing three clauses does not constitute three separate interrogatories. Moreover, only a selective count of the different clauses in Richardson's interrogatories would support the State's objection. Richardson's first discovery requests

---

[2] We do not reach the issue of whether interrogatories containing more than fifty sentences violate the "subpart" provision of Rule 33(a), M.R.Civ.P.

18

included over fifty clauses in roughly her first twelve interrogatories alone. Yet, the State did not assert that she had exceeded fifty interrogatories until the request which she designated as "Interrogatory No. 23." Needless to say, recipients of interrogatories are not entitled to object based on a selective count of the various clauses contained in the requests.

¶44 We note that the District Court implicitly rejected the State's claim that Richardson had exceeded fifty interrogatories. The State asserted this objection in its brief opposing

Richardson's Motion to Compel Discovery. However, the court ordered the State to answer Richardson's requests without addressing the objection. Similarly, we conclude that the State's objection was without merit, and was an abuse of discovery.

¶45    In addition to her interrogatory seeking information regarding other falls, Richardson served the State with a request for production seeking any writings documenting these falls. Although possessing at least seven incident reports documenting other falls, the State merely answered "Not applicable," providing no explanation for this response. The State provided the same response to four of Richardson's six requests for production. However, the Montana Rules of Civil Procedure do not allow for such a response.

¶46    Rule 34(a), M.R.Civ.P., provides that a party may utilize requests for production to facilitate discovery of documents, in accordance with the scope of discovery as specified in Rule 26(b), M.R.Civ.P. Rule 34(b), M.R.Civ.P., requires that a party served with a request for production must either state that it will accommodate the request, or assert an objection and state the reason therefore. Here, the State did neither. In addition to this violation of Rule 34(b), M.R.Civ.P., the State also violated the District Court's subsequent Order requiring the State to answer Richardson's requests. Then, after one more prompting by Richardson's counsel, the State delayed disclosure again before finally providing the incident reports eleven days before trial.

¶47    On appeal, the State provides no explanation for its violation of Rule 34(b), M.R.Civ.P. Given the State's purported belief that Richardson had improperly served more than fifty interrogatories, perhaps the State believed that it could simply stop answering her

20

requests for production as well. However, while parties are limited to serving fifty interrogatories without leave of the court, no such limit applies to requests for production. Given this plain and repeated violation of Rule 34(b), M.R.Civ.P., and the State's failure to justify these violations, we conclude that the State's conduct was an abuse of discovery.

¶48 The State did object to one of Richardson's requests for production. This request stated: "Please produce a true and correct copy of any maintenance records relating to the area of Plaintiff's fall for the five years prior to Plaintiff's fall." In response, the State claimed that this request was "vague and ambiguous," and that it sought information that was not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The State also asserted this "vague and ambiguous" objection in response to six of Richardson's ten interrogatories, including the following two: (1) "Please identify any efforts taken to warn patrons or the public of the potential for slip hazards in the area of Plaintiff's fall."; and (2) "Please identify any warnings provided at the time of, or after Plaintiff's fall intended to prevent injuries from slipping on the floor in the area of Plaintiff's fall."

¶49 In its brief opposing Richardson's Motion to Compel Discovery, the State asked the District Court to sustain its "vague and ambiguous" objections, arguing:

> The State's objection was based on its inability to determine whether Richardson intended the word "area" in the discovery requests to be limited to the precise location in the locker room where Richardson allegedly fell, the locker room itself or whether Richardson sought discovery concerning the entire facility. . . . [I]f the State interpreted area to mean the entire facility, then the discovery seeks information wholly unrelated to the location of Richardson's accident and which is not relevant to the issue of whether the

21

floor in the women's locker room is unreasonably dangerous. Because Richardson did not define the term and because she used it where it could have several different meanings, the State had no choice but to assert its vague and ambiguous objection.

Indeed, the term "area," standing alone, could have "several different meanings." However, the term was not standing alone in Richardson's discovery requests. Richardson sought information regarding the "area *of Plaintiff's fall*." Further, the phrase "area of Plaintiff's fall" was used in the context of a slip and fall case.

¶50 We wholeheartedly disagree with the State's claim that it "had no choice but to assert its vague and ambiguous objection." In reality, the State could have chosen to cooperate and facilitate discovery by reading the term "area" in context. Instead, however, the State inserted artificial ambiguity into the term and thereby refused to provide answers. Moreover, the State's strained interpretation of the term "area" is clearly disingenuous given that one of the State's own prior interrogatories served on Richardson sought information regarding the "areas" involved in the accident.

¶51 We note that when Richardson re-served her discovery requests on the State following the District Court's Order granting her Motion to Compel Discovery, she amended them by replacing the phrase "the area of Plaintiff's fall" with "the women's locker room." We can detect no difference in clarity between the original requests and the amended requests. In fact, the phrase "the women's locker room" could be interpreted as a broader area than "the area of Plaintiff's fall." Yet, the State answered the amended requests pursuant to the District Court's Order.

22

¶52    We conclude that it was simply unreasonable to interpret Richardson's requests for information regarding "the area of Plaintiff's fall" as possibly seeking "information wholly unrelated to the location of Richardson's accident." Thus, the State was not entitled to withhold relevant evidence based upon this interpretation. When an interrogatory can reasonably be interpreted, in the context of the claims and defenses at issue, as seeking discoverable information, the recipient of the interrogatory must interpret it that way rather than imputing some meaning to the request which would render it vague, ambiguous, or objectionable in some other respect. If litigants were allowed to do otherwise, the discovery process would not serve its purpose. Discovery rules can not possibly be written with the precision necessary to specify what information is discoverable in every type of case. Hence, these rules are written in general terms, imposing a broad duty of disclosure. Moreover, the Montana Rules of Civil Procedure require a good faith effort in serving discovery responses. *See* Rules 11 and 26(g), M.R.Civ.P.[3] Simply put, recipients of discovery requests are not entitled to indulge in such unrealistic interpretation as the State did here.

¶53    While the State's objections to Richardson's discovery requests were an abuse of discovery, the State's subsequent conduct was particularly egregious. Prior to the hearing on Richardson's Motion to Compel Discovery, the State filed a Motion for Summary Judgment. As noted above, the State acknowledged in this Motion that it could be found liable if it should have anticipated Richardson's injury. However, the State argued that it was entitled

---

[3]  *See also* Rule 3.4(d) of the Montana Rules of Professional Conduct, stating that a lawyer shall not fail to make reasonably diligent effort to comply with a legally proper discovery

23

to summary judgment because Richardson could not demonstrate that the State should have anticipated her injury. The State was still withholding the evidence of other falls at this point and thus Richardson was forced to defend against the Motion without the benefit of that information. As the evidence of other falls was highly relevant to the issue of whether the State should have anticipated Richardson's injury, it is clear that the State was exploiting Richardson's lack of knowledge regarding this evidence.

¶54    Thereafter, the State further exploited Richardson's lack of knowledge regarding the other falls by filing a Motion *in Limine* seeking to exclude that evidence before ever disclosing it to Richardson. Even worse than this preemptive tactic, however, was the State's argument, in its brief supporting the Motion, that the evidence of other falls should be excluded because Richardson's expert had not tested the areas of the locker room floor where other women had fallen. Of course, without the information regarding the other falls, Richardson was denied the opportunity to have her expert investigate them. Incredibly, when it filed this Motion, the State was still in violation of the District Court's Order granting Richardson's Motion to Compel Discovery.

¶55    Before discussing the issue of sanctions, we must note that the State's conduct undermined the chances of settlement. Without the information regarding other falls, Richardson was unable to fully evaluate the merits of her claim. Placing a litigant in this situation substantially reduces the chances of settlement. This is of significant importance because, as we have observed:

---

request.

"The law favors compromises. This is especially true in tort actions, not only because they relieve the labors of courts, and avoid expense, but also because, where the parties agree between themselves upon a settlement of the claim, the result reached is frequently a more equitable adjustment than is possible to be had in a court of law."

*Durden v. Hydro Flame Corp.*, 1999 MT 186, ¶ 20, 295 Mont. 318, ¶ 20, 983 P.2d 943, ¶ 20 (quoting *Black v. Martin* (1930), 88 Mont. 256, 269-70, 292 P. 577, 581). Thus, when the State withheld the evidence of other falls, it undermined the litigation by reducing the chances of settlement.

¶56 This Court strictly adheres to the policy that dilatory discovery actions shall not be dealt with leniently. *Morris v. Big Sky Thoroughbred Farms*, 1998 MT 229, ¶ 13, 291 Mont. 32, ¶ 13, 965 P.2d 890, ¶ 13 (citing *Owen v. F.A. Buttrey Co.* (1981), 192 Mont. 274, 278, 627 P.2d 1233, 1235). As we have said, the trial courts, and this Court on review, must remain intent upon punishing transgressors rather than patiently encouraging their cooperation. *Morris*, ¶ 13 (citing *Owen*, 192 Mont. at 278, 627 P.2d at 1235). Accordingly, the imposition of sanctions for failure to comply with discovery procedures is regarded with favor. *Schuff*, ¶ 71 (citing *McKenzie*, 285 Mont. at 506, 949 P.2d at 1172). "It is, after all, a maxim of our rules of discovery that the price for dishonesty must be made unbearable to thwart the inevitable temptation that zealous advocacy inspires." *Schuff*, ¶ 71 (citing generally *Eisenmenger v. Ethicon, Inc.* (1994), 264 Mont. 393, 406, 871 P.2d 1313, 1321; *Owen*, 192 Mont. at 280, 627 P.2d at 1236).

¶57 We have adopted this policy of intolerance regarding discovery abuse pursuant to our "concern over crowded dockets and the need to maintain fair and efficient judicial

administration of pending cases." *Delaware*, ¶ 87 (citing *McKenzie*, 285 Mont. at 506, 949

P.2d at 1171).  As we have observed:

> "Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism."

*First Bank (N.A.)-Billings v. Heidema* (1986), 219 Mont. 373, 376, 711 P.2d 1384, 1386

(quoting *G-K Properties v. Redevelopment Agency of City of San Jose* (9th Cir. 1978), 577

F.2d 645, 647).

¶58     We have held that some discovery abuses warrant imposition of a default judgment on

the issue of liability.  In *Schuff*, we affirmed the district court's imposition of a default

judgment against the defendant on the issue of liability, as a sanction for discovery abuses.

*Schuff*, ¶ 82.  In doing so, we noted that the defendant's inadequate discovery responses

prohibited the plaintiff from conducting meaningful follow-up discovery.  *Schuff*, ¶ 78.  In

*Culbertson Health Care Corp. v. JP Stevens & Co. Inc.*, 2005 MT 254, 329 Mont. 38, 122

P.3d 431, we also affirmed the district court's imposition of a default judgment against the

defendant on the issue of liability, as a sanction for discovery abuse.  *Culbertson*, ¶ 21.  In

doing so, we noted that the defendant's unresponsiveness during discovery prevented the

plaintiff from assessing the merits of the proffered defenses and building its case-in-chief,

forcing the plaintiff to incur mounting litigation costs while proceeding under a cloud of

uncertainty.  *Culbertson*, ¶ 18 (citing *Patterson v. State, Dept. of Justice*, 2002 MT 97, ¶ 21,

26

309 Mont. 381, ¶ 21, 46 P.3d 642, ¶ 21) ("Common sense and fundamental fairness suggest that no party should be forced to proceed under such a 'cloud of uncertainty.'").

¶59 Here, the effects of the State's conduct were similar to the prejudice which we observed in *Schuff* and *Culbertson*. The State's concealment of the evidence of other falls prevented Richardson from assessing the merits of the State's proffered defenses and building her case-in-chief. Additionally, the State's belated disclosure prevented Richardson from conducting meaningful follow-up discovery in time for trial.

¶60 The State emphasizes the fact that Richardson did not seek a continuance in order to further prepare, despite the District Court's offer to postpone the trial for one month. However, it was the State's improper concealment of evidence which directly caused Richardson's predicament. As Richardson states, "expensive plane tickets were purchased, witnesses were located and under subpoena, experts and counsel arranged their calendars months prior to ensure dedicated dates for trial." Richardson further notes that she "faced losing thousands of dollars in costs getting ready for trial . . . and re-doing expensive, time-consuming discovery due to the State's previous concealment of obviously discoverable facts."

¶61 Richardson was indeed faced with a no-win situation--i.e., either proceed to trial without fully investigating and developing the evidence of other falls, or incur the needless expense and hassle of continuing the trial and conducting further preparation which could have been achieved earlier with timely disclosure from the State. As the State's improper

27

conduct was the sole cause of this predicament, the State will not now be heard to criticize Richardson for choosing one of two undesirable options.

¶62    In denying Richardson's Motion to Amend the Judgment, the District Court concluded that the State did not abuse the discovery process.  We conclude, however, that the State's conduct, as detailed above, was a blatant abuse of discovery.  Accordingly, we hold that the District Court abused its discretion in denying Richardson's Motion.

¶63    The purpose of the Montana Rules of Civil Procedure is to "secure the just, speedy, and inexpensive determination of every action."  Rule 1, M.R.Civ.P.  Here, the State's discovery abuse directly undermined each of these three objectives.  Achieving a just determination is contingent upon full disclosure.  As we have stated, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *State Highway Comm'n v. District Court* (1966), 147 Mont. 348, 357, 412 P.2d 832, 837.  Achieving a speedy and inexpensive determination is contingent upon timely disclosure, which is thwarted by protracted legal wrangling over semantic nuances and technicalities.

¶64    The first sentence in the Preamble of the Montana Rules of Professional Conduct states that "[a] lawyer shall always pursue the truth."  This case is the poster-child for how that principle is frustrated by abusive discovery tactics. The State asserted objections which were without merit, and in many cases hyper-technical and not legally recognized, needlessly increasing the cost of litigation by forcing Richardson to file and orally argue a Motion to Compel Discovery.  Further, the State concealed the evidence of other falls until eleven days before trial.  Finally, the State sought strategic advantage through its improper concealment

28

by exploiting Richardson's lack of knowledge regarding the other falls. Indeed, because of the State's unwillingness to participate in good faith in discovery, countless hours of counsel's time and judicial resources were wasted. The jury's function in our civil justice system was effectively nullified. And, most importantly, the Plaintiff was deprived of a meaningful day in court.

¶65 Generally, it is up to the trial court to decide the proper sanction for discovery abuse. While we continue to adhere to this principle, there are exceptional cases where only one sanction can properly address the conduct at issue. Because the State's discovery abuse here was so blatant and systematic, and because it undermined the integrity of the entire proceeding, the only proper sanction is a default judgment on the issue of liability, just as we approved in *Schuff* and *Culbertson*. Any less severe sanction would be inconsistent with the rule that punishment for discovery abuses must be made unbearable in order to thwart the inevitable temptation which zealous advocacy inspires. *See Schuff*, ¶ 71.

¶66 We approved a similar sanction in *Jerome v. Pardis* (1989), 240 Mont. 187, 783 P.2d 919, a personal injury case where the plaintiff failed to provide correct and complete answers to the defendant's discovery requests seeking information regarding the plaintiff's medical history. *Jerome*, 240 Mont. at 188-90, 783 P.2d at 920-21. In accordance with our strict policy of non-leniency toward discovery abuse, the district court dismissed Jerome's case with prejudice. *Jerome*, 240 Mont. at 190, 783 P.2d at 921. In doing so, the court "found that the discovery tactics pursued by the plaintiff had caused substantial prejudice to defendants that could not be corrected without defendants incurring considerable expense,

29

particularly in re-deposing physicians who had relied on incomplete medical records." *Jerome*, 240 Mont. at 190, 783 P.2d at 921. We concluded that dismissal with prejudice was an appropriate sanction and stated that the plaintiff's conduct "would create an unreasonable burden and increased expense to Pardis in re-deposing witnesses whose prior testimony was given without the benefit of the improperly withheld information." *Jerome*, 240 Mont. at 193, 783 P.2d at 923.

¶67 Similarly here, remanding for a new trial would require Richardson to incur the unnecessary expense of additional discovery and trial preparation, including the expense of re-deposing expert witnesses whose prior deposition testimony was given without the benefit of the information regarding other falls. This is an unreasonable burden on any litigant, and it is particularly inappropriate here given Richardson's advanced age. Moreover, remanding for a new trial would be inconsistent with the policy reason underlying the law's intolerance toward discovery abuse--i.e., "the concern over crowded dockets and the need to maintain fair and efficient judicial administration of pending cases." *Delaware*, ¶ 87 (citing *McKenzie*, 285 Mont. at 506, 949 P.2d at 1171). The State has improperly delayed Richardson's opportunity for a fair resolution of her claim, and any further delays resulting from the State's discovery abuse would simply be unjust.

¶68 In *Schuff*, we recognized that the principle of "trial on the merits" weighs against the imposition of a default judgment. *Schuff*, ¶ 81. However, we proceeded to affirm the default judgment because the defendant's actions outweighed this principle. *Schuff*, ¶ 81. Specifically, we noted that the defendant "willfully and in bad faith shielded Schuff from a

30

clear view of the truth, and simply did not 'speak' the truth itself when required by our rules of discovery." *Schuff*, ¶ 81. Similarly here, we conclude that the State's pattern of willful and bad faith conduct outweighs the general preference for trial on the merits. Simply put, the State demonstrated clear disregard for a resolution on the merits when it improperly concealed important evidence by asserting frivolous objections, and subsequently sought to gain strategic advantage thereby.

## CONCLUSION

¶69 We reverse the District Court's Order denying Richardson's Motion to Amend the Judgment. Further, we remand for the entry of an order vacating the Judgment entered in favor of the State, and for entry of a default judgment against the State on the issue of liability, as well as further proceedings to determine damages.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE