JUSTICE McKINNON,
dissenting.
¶53 I agree with the Court’s pronouncement that BNSF, or indeed any litigant, is not “entitled to unilaterally determine which evidence is relevant or valuable...” Opinion, ¶ 30. Nevertheless, I am troubled by our decision today, in which we sanction BNSF based not on its conduct in the case before us, but on its alleged prior bad acts in completely unrelated past litigation. Opinion, ¶¶ 22-26.
¶54 I believe our inquiry should be limited to the circumstances before *329 us and not focused on punishing a litigant we perceive to be a bad actor. The Court primarily premises its conclusion that BNSFs conduct was sanctionable on the fact that BNSF has previously been sanctioned for discovery abuses, rather than on an analysis of the record in this case. While I do not mean to say that we — or trial courts and opposing parties, for that matter — should put up a facade of naiveté in the face of systemic abuses, I do think we should honor the basic concept that a party appearing before this Court should not be pre-judged on the basis of an allegedly bad character. See M. R. Evid. 404. Nor should a party be exempted from receiving the benefit of this principle because that party is a corporate entity rather than an individual.
¶55 A review of the record in the case before us is sufficient to demonstrate that BNSFs conduct was inappropriate. Disturbingly, Ahem stated in her deposition that BNSF has no policy requiring supervisors to promptly notify the claims department ofincidents; that she has received no formal training regarding the collection and preservation of evidence; and that she was not aware of any BNSF policy regarding the preservation of evidence relevant to an injury claim. Price characterized his shop’s practice regarding video footage as follows: “[I]f we think it’s useful or of value or has any bearing on the incident we are investigating, we would make the request of the resource protection desk to save a particular part of that video.”
¶56 Consistent with this practice, after reviewing about 15 minutes of footage from one camera, Price and McLeod made the independent determination, absent consultation with any claims specialist or legal counsel, that the footage contained “no evidence to preserve.” At the very least, preservation of the footage would have conclusively determined whether the accident was recorded. Further, McLeod acknowledged that there were many other cameras in the shop that may have shown Spotted Horse before or after the accident, or personnel in the area surrounding the stall where the accident took place. The footage from these other cameras was never reviewed at all. BNSF’s lack of any policy or training whatsoever addressing the preservation of evidentiary materials directly resulted in the destruction of potentially relevant evidence prior to trial. As the Court notes, “The intentional or negligent destruction or spoliation of evidence cannot be condoned and threatens the very integrity of our judicial system.” Opinion, ¶ 29 (quoting Oliver v. Stimson Lumber Co., 1999 MT 328, ¶ 31, 297 Mont. 336, 993 P.2d 11). I have no trouble concluding that BNSF’s failure to adopt a reasonable policy — or any policy — for the preservation of evidence regarding workplace injuries *330 constituted, in this case, negligent spoliation of evidence, if not more. The depositions filed in this case are sufficient to lead to this conclusion.
¶57 Although I would conclude that BNSFs conduct merited the imposition of sanctions, I am mindful that we review the District Court’s decision regarding the appropriate form of sanctions for an abuse of discretion. Richardson v. State, 2006 MT 43, ¶ 21, 331 Mont. 231, 130 P.3d 634.1 believe the District Court attempted in good faith to neutralize the effect of BNSF’s destruction of evidence, while recognizing that a trial on the merits is generally favored over a default judgment. Brilz v. Metro. Gen. Ins. Co., 2012 MT 184, ¶ 15, 366 Mont. 78, 285 P.3d 494 (citing Schmitz v. Vasquez, 1998 MT 314, ¶ 27, 292 Mont. 164, 970 P.2d 1039). The Court assumes that if BNSF employees were permitted to testify that the video footage did not show the accident, this would establish an inference in the minds of the jury that the accident did not occur. Opinion, ¶ 33. While this would be one possible interpretation of that testimony, it is not necessarily the only interpretation, or even the most logical. The depositions are clear that the camera angle was insufficient to show the area where the accident reportedly occurred. This fact does not imply that the accident did not occur. Cross-examination of witnesses for BNSF should allow Spotted Horse to draw out details of their failure to preserve, or even fully review, the evidence available. The testimony could just as likely result in the negative inference that BNSF engaged in a cover-up.
¶58 While stronger sanctions were certainly available and may have been appropriate, the decision regarding the suitable form of sanctions was left to the discretion of the District Court. We fail to recognize the distinction between a trial court’s discretion in assessing the propriety of sanctions and an appellate court’s role in reviewing the exercise of that discretion when we cite the opinions of federal district courts on the issue. Opinion, ¶¶ 34-37 (citing Peschel v. City of Missoula, 664 F. Supp. 2d 1137 (D. Mont. 2009)). Although this Court, if vested with the discretion to make an initial determination of the form of sanctions, may have exercised that discretion differently than the District Court in this instance, 1 am not convinced that the District Court abused its discretion by failing to impose stronger sanctions.
¶59 Finally, I believe the Court’s analysis of Jury Instruction No. 11 is insufficient. It is not readily apparent on the face of the instructions that an obligation “to eliminate unreasonable risks” is inconsistent with or contradicts the duty of a reasonable person to use reasonable care regarding reasonably foreseeable risks, stated in Jury Instruction No. 10. The instructions, taken as a whole, adequately instructed the *331 jury regarding an employer’s duty to exercise reasonable care when it knows or should know of a potential hazard in the workplace. See Gallose v. Long Island R.R. Co., 878 F.2d 80, 85 (2d Cir. 1989); Tobin v. Natl. R.R. Passenger Corp., 677 F. Supp. 674, 675 (D. Mass. 1988).
¶60 For the foregoing reasons, I dissent and would affirm the judgment of the District Court.