DA 08-0019

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 431N

FLATHEAD RIVER RANCH ESTATES,

        Plaintiff and Appellee,

   v.

PHILLIP WOLF and KATHLEEN WOLF,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 05-857 B
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Phillip Wolf and Kathleen Wolf (self-represented), Wheatridge, Colorado

        For Appellee:

            Sean S. Frampton, Morrison & Frampton, Whitefish, Montana

Submitted on Briefs:  November 19, 2008

Decided:  December 16, 2008

Filed:

_____
                    Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Phillip and Kathleen Wolf (Wolfs) appeal from a judgment against them in the Eleventh Judicial District Court, Flathead County. The District Court entered the Wolfs' default as a sanction, and assessed damages at $2,351,122.76, including $500,000 in punitive damages against the Wolfs and in favor of Appellee Flathead River Ranches Estates (FRRE). We Affirm.

¶3     The Wolfs and FRRE entered into an agreement in August of 2003 whereby FRRE purchased approximately 320 acres of undeveloped land in Flathead County from the Wolfs for the purpose of developing and selling high end residential lots. The purchase price was $2,250,000. The contract provided that the Wolfs would "carry back" $1,000,000 to improve a 5.2 mile access road so that the roadbed would be 24-feet wide and ready to receive asphalt that complied with Flathead County road standards. The parties executed a mortgage against the real property in favor of the Wolfs to secure the carry back. The road was to be completed on or before June 1, 2004. This date was later extended to July 1, 2004, and the carry back amount was reduced to $800,000.

¶4     Approximately two miles of the road crosses Forest Service land. The Wolfs failed to apply for a road improvement permit from the Forest Service until June 24, 2004. The

2

Forest Service did not issue the permit because the required studies had not been completed and the application was incomplete. The Wolfs did not construct the road.

¶5 FRRE applied for and received a permit to construct the road in October of 2004. By mid-2005, due to the lack of an adequate road, FRRE missed the opportunity to sell lots and it became apparent to FRRE that the Wolfs would not improve the road in a timely fashion. FRRE solicited bids and entered into a contract for construction of the road and ultimately the road was built.

¶6 FRRE filed a complaint against the Wolfs in November of 2005, alleging breach of contract, negligent or intentional misrepresentation, and fraud. FRRE also claimed it was entitled to punitive damages.

¶7 The Wolfs, self-represented, filed an answer in February of 2006, in which they denied numerous allegations and pled affirmative defenses. The District Court entered a scheduling order on March 17, 2006. The order specified that discovery was to be completed by June 16, 2006, and that a jury trial was scheduled for the September 25, 2006, term, with a specific date to be set following the pretrial conference.

¶8 In April, the Wolfs sent a letter to the clerk of court in which they indicated that they intended to file an amended answer and asked for time to complete an attorney search. FRRE served discovery requests upon the Wolfs on April 20, 2006. While FRRE fully complied with the discovery order, identified its exhibits, witnesses and expert witnesses, the Wolfs did not respond and did not conduct any discovery.

¶9 On June 9, 2006, FRRE moved for a default judgment against the Wolfs as a sanction for their failure to comply with the scheduling order and lack of cooperation in the litigation.

3

Phillip Wolf (Phillip) then filed a document entitled, "Defendant's Answer to Civil Complaint, defenses, counterclaim." FRRE filed an objection and moved for sanctions under M. R. Civ. P. 11. Counsel for FRRE stated he refused to respond to the answer and counterclaim unless ordered to do so and requested a $1,000 sanction for Phillip's attack on counsel's character.

¶10 Counsel for FRRE attempted to schedule a settlement conference in August of 2006 when the Wolfs could be personally present. The Wolfs failed to respond, and FRRE moved for waiver of the settlement conference.

¶11 The Wolfs failed to appear at an August 30, 2006, pretrial conference. In September of 2006, FRRE filed a renewed motion for a default judgment as a sanction under M. R. Civ. P. 37(d). The Wolfs moved for a continuance based on Phillip's alleged heart condition and contacted counsel for FRRE. FRRE's counsel asked that Phillip produce a letter from his physician confirming his medical condition. When Phillip submitted a "medical order" from a cardiologist, it did not appear to be authentic. FRRE's counsel investigated and was advised by the cardiologist that he did not sign the medical order.

¶12 In November of 2006, the District Court granted FRRE's motion for default as a sanction and denied the Wolfs' motion for a continuance. The Wolfs appealed that order to this Court. FRRE moved to dismiss the appeal. We dismissed the appeal without prejudice because the order was not a final order.

¶13 FRRE moved for a release of the mortgage and lien occasioned by the carry back, and to substitute a bond for the recorded mortgage. The District Court granted the motion and ordered the mortgage satisfied of record.

4

¶14 After the Wolfs' default was entered, the District Court held a hearing on damages. At this hearing, counsel for Wolfs appeared, but they did not personally appear. The District Court set damages as noted in ¶ 2 above.

¶15 The Wolfs raise four issues for appeal, which we restate as follows:

¶16 1. Did the District Court err in denying the Wolfs' motion to continue the pre-trial conference and the trial?

¶17 2. Did the District Court err in delaying a ruling upon the Wolfs' motion to continue the pretrial conference and trial until after the trial date?

¶18 3. Did the District Court err in granting a default judgment against the Wolfs as a sanction?

¶19 4. Are the Wolfs entitled to a reversal of the default judgment on the grounds they were not afforded sufficient latitude in proceeding as self-represented litigants?

¶20 We review discretionary rulings by a district court to determine if the court abused its discretion. *In the Matter of R.F.,* 2001 MT 199, ¶ 21, 306 Mont. 270, ¶ 21, 32 P.3d 1257, ¶ 21 (citations omitted).

¶21 The Wolfs assert that they had a valid defense to the complaint because FRRE was responsible for securing the road permit and failed to do so. They also maintain that they acted in good faith, and there was no inconvenience to FRRE. The Wolfs state in their opening brief that Phillip had a heart condition that required two surgeries and that a back injury resulted from rehabilitation. However, nothing in the record substantiates that Phillip had heart surgery, or if he did, when the surgeries took place.

¶22 The District Court made detailed findings of fact and provided a rationale for denying

5

the motion for a continuance. The court specifically referred to Wolfs' failure to comply with the scheduling order, unresponsiveness to discovery requests, the forged physician's order, and the Wolfs' failure to appear at the pretrial conference.

¶23 The District Court's findings of fact clearly demonstrate that the court did not abuse its discretion. *See In the Matter of R. F.*, ¶ 24.

¶24 Having determined the District Court did not abuse its discretion in denying the continuance, we decline to further discuss the timeliness of the order as it is of no consequence.

¶25 We review sanctions imposed for discovery abuse to determine whether a district court abused its discretion. *Richardson v. State,* 2006 MT 43, ¶ 21, 331 Mont. 231, ¶ 21, 130 P.3d 634, ¶ 21. The District Court specifically found that: 1) the Wolfs unreasonably and vexatiously prolonged the litigation; 2) FRRE had invested a great deal of money into the property and was unable to sell it due to the Wolfs' liens on the property; 3) the Wolfs' conduct constituted a "concerted effort to avoid cooperating" with FRRE in the litigation; 4) the Wolfs' conduct included forging documents in an attempt to avoid cooperating in the discovery process and to delay the proceedings; and 5) the Wolfs were aware that FRRE was seeking default as a sanction, yet failed to appear at the pretrial conference.

¶26 Litigants who willfully delay the discovery process and defy the authority of the court cause inexcusable prejudice to their opponents. Further, they deprive their opponents of access to the courts as a dispute-settlement mechanism. *Richardson*, ¶ 57. The Wolfs' conduct prejudiced FRRE and is sufficiently egregious to justify the default sanction.

¶27 The standard of review for determining whether, as self-represented litigants, the

6

Wolfs are entitled to reversal of the default judgment is also an abuse of discretion. *First Bank v. Heidema,* 219 Mont. 373, 711 P.2d 1384 (1989). We require all litigants--self-represented as well as litigants represented by counsel--to comply with procedural rules. Self-represented litigants are afforded considerable leeway in legal proceedings; however that leeway may not prejudice the other party. *Greenup v. Russell,* 2000 MT 154, ¶ 15, 300 Mont. 136, ¶ 15, 3 P.3d 124, ¶ 15. We conclude that the District Court did not err in concluding that FRRE suffered prejudice as a result of the Wolfs' actions and inaction in this litigation and did not err in refusing to excuse the Wolfs' abuse of legal process even though they appeared to be self-represented.

¶28     Finally, FRRE moves this Court for its attorney fees on appeal. Attorney fees on appeal may be awarded when the underlying agreement specifies that a prevailing party is entitled to attorney fees in the event of litigation. In this instance, paragraph 18 of the purchase contract specifies that if legal action is necessary to enforce any provision of the contract, the prevailing party is entitled to attorney fees. We, therefore, conclude FRRE is entitled to the award of attorney fees on appeal in an amount to be determined by the District Court.

¶29     We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the face of the briefs and the record this appeal is without merit. These issues are controlled by settled Montana law that the District Court correctly interpreted.

¶30     We affirm the judgment and remand to the District Court to determine the amount of

attorney fees to be awarded to FRRE on appeal.

/S/ JOHN WARNER

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE