FILED

10/14/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0469

DA 24-0469

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 231

IN THE MATTER OF THE POTTER
EXEMPTION TRUST:

BETTY N. POTTER,

       Petitioner and Appellant,

  v.

CAITLIN WALL and JAMES STONE, as Trustees
of the Potter Exemption Trust, E BAR L RANCH,
LLP, MARY POTTER VERO, and WILLIAM S. POTTER,

       Respondents and Appellees.

POTTER EXEMPTION TRUST, CAITLIN WALL,
and JAMES STONE,

       Counter-Petitioners,

  v.

BETTY N. POTTER, MARY POTTER VERO,
WILLIAM S. POTTER, E BAR L RANCH, LLP,
and John Does 1-10,

       Counter-Respondents.

APPEAL FROM:    District Court of the Fourth Judicial District,
              In and For the County of Missoula, Cause No. DG-21-91
              Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Julie R. Sirrs, Elizabeth A. Scott, Boone Karlberg, P.C., Missoula,
           Montana

For Appellees Caitlin Wall and James Stone:

    Cory R. Laird, Riley M. Wavra, Laird Cowley, PLLC, Missoula, Montana

    Charles E. Hansberry, Jenny M. Jourdonnais, Hansberry & Jourdonnais, PLLC, Missoula, Montana

For Appellee E Bar L Ranch, LLP:

    Jill Gerdrum, Fred Simpson, Hall & Evans, LLC, Missoula, Montana

For Appellees Mary Potter Vero and William S. Potter:

    Isaac M. Kantor, Kantor Law PLLC, Missoula, Montana

---

Submitted on Briefs: August 13, 2025

Decided: October 14, 2025

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1      Betty Potter (Betty) appeals the July 2024 Order from the Montana Fourth Judicial District Court, Missoula County, denying her summary judgment and granting summary judgment to the Potter Exemption Trust (PET) and E Bar L Ranch, LLP (E Bar L).  We address the following issues:

1. *Did the District Court err in granting summary judgment that Wall's dual role as PET trustee and E Bar L employee did not trigger the § 72-38-802, MCA, conflict presumption, which therefore foreclosed removal or other relief under § 72-38-706 and § 72-38-1001, MCA?*

2. *Did the District Court err in granting summary judgment that the 2022 PET-E Bar L land-use lease was not "affected by" a conflict and therefore not voidable under § 72-38-802(2), MCA?*

3. *Did the District Court err in granting summary judgment that Betty was not entitled to E Bar L financial information reasonably necessary to enforce her beneficiary rights and to test conflicted transactions under § 72-38-813, MCA, notwithstanding available protective measures under M. R. Civ. P. 26(c)?*

4. *Did the District Court err in granting summary judgment that Wall was not subject to removal as a PET trustee under § 72-38-706(2), MCA?*

5. *Did the District Court err in granting summary judgment that the family trust instrument did not mandate three PET co-trustees or permit Betty, a beneficiary, to appoint successor trustees?*

We hold that the District Court erroneously granted summary judgment on Issues 1 through 4 and therefore reverse and remand for further proceedings in accordance with this Opinion as to those issues.  We affirm on Issue 5.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      In 2003, Betty and her late husband Orrin (Bill) Potter established a family trust that, upon Bill's passing in 2013, split into three separate trusts:  the Survivor's Trust, the

3

Marital Trust, and the Potter Exemption Trust (PET).  By operation of the family trust instrument, Betty became the income beneficiary of the PET, but not a trustee,[1] and Mary Potter Vero (Mary) and William S. Potter (Spike), Bill's children from a prior marriage, were named as the remainder beneficiaries.  The family trust instrument provided that Land Lindbergh, James Masar, and Henry Goetz, Bill's long-time friends, would serve as the initial successor trustees of the PET.  Various assets transferred to the PET, including, as pertinent here, (1) approximately 4,000 undeveloped acres near Greenough, Montana (PET land); and (2) 26.7% ownership interest in E Bar L that runs a historic guest ranch located on land it owns (about 85 acres) and on land it leases from the PET for commercial recreational activities.[2]  The PET land is encumbered by, among other things, a conservation easement in favor of The Nature Conservancy (TNC).

¶3  The PET provides for Betty, the sole beneficiary, to receive discretionary income/principal distributions sufficient to maintain her standard of living as measured at the time of Bill's passing.  It also provides that Betty must continue living in the Potter home, which is located on land E Bar L owns.  The PET rents the Potter home from the E Bar L under a reciprocal agreement conditioned on the E Bar L's leasing the PET land.  At the trustees' discretion, upon Betty's passing, the PET assets may pass to Mary and

---

[1] The family trust instrument provides that, "[u]pon the death of a settlor, the surviving settlor will act as a trustee of all trusts except the Exemption Trust."  The family trust instrument specified that the surviving spouse (Betty) would continue as trustee of the Survivor's Trust and the Marital Trust, but not of the PET.

[2] The PET land had been in Bill's family since the early 1900's.  In the 1920's, Bill's family established the E Bar L.  Bill's ownership in the E Bar L and PET land predated his 1984 marriage to Betty.

Spike or their descendants. Mary's daughter, Juanita Vero (Juanita), is an E Bar L manager and partner.

¶4 The PET is unique in that it requires trustees to manage intertwined trust assets, including the PET land and the PET's partnership interest in E Bar L, which operates, in part, on land it leases from the PET. The PET earns income as the lessor of its land and as an E Bar L partner. Given this special, historical relationship between the PET land and the E Bar L, Bill and Betty designated Lindbergh, Masar, and Goetz as PET co-trustees.[3] According to the trust instrument, trustees have full discretion to select their successors. In 2018, the original successor trustees retired and appointed Caitlin Wall (Wall), James Stone (Stone), and George Hirschenberger as their replacements. Hirschenberger died suddenly in 2022, and Wall and Stone have been the PET's only trustees since then. Stone is a contractor employed by the E Bar L for fencing and irrigation work.[4] Wall works for the E Bar L as an assistant manager; lives in employee housing on E Bar L property; and reports directly to E Bar L partners. Original successor co-trustees Lindbergh and Goetz recognized Wall's potential conflict of interest when they appointed her but decided that Wall's familiarity with E Bar L operations outweighed any risk of conflict.

¶5 In 2010, Bill and Betty entered into a 5-year lease with the E Bar L for use of the 4,000 acres the PET now owns. After the PET came into existence upon Bill's 2013 death

---

[3] The family trust instrument states that, upon the surviving spouse's death, the PET trustees are to manage the trust assets "in a manner consistent with any [sic] supportive of the historic land management practices and philosophy of the Settlors," which are "well known by the Trustees."

[4] Stone also previously worked for the PET as a land manager.

and the 4,000 acres were transferred to it, the successor trustees negotiated shorter 1-year leases until 2022, when all three successor co-trustees (Wall, Stone, and Hirschenberger) negotiated a 5-year lease. The 2022 lease provided for optional renewal for up to two more 5-year terms, unless a party declines to renew. The 2022 rent was $50,000 annually, increasing each year by a certain percentage based upon the U.S. Consumer Price Index. The 2022 lease also imposed additional requirements, including an annual operating plan for land use and compliance with TNC's conservation easement. We will discuss the lease more specifically below.

¶6 According to the M. R. Civ. P. 56 record, Betty is at odds with Bill's children, Mary and Spike, Mary's daughter Juanita (an E Bar L partner), Matt Knox (E Bar L's corporate representative), and trustee Wall (an E Bar L employee).[5] Betty contends that Wall moved the PET office out of Betty's home into Wall's home and will not meet her in person without a third party present. Wall concedes her relationship with Betty is strained. Stone, the only other PET trustee, is Betty's point-of-contact. Betty believes Wall's hostility toward her is motivated by Wall's desire to act in her bosses' favor when administering the PET and to conceal a conflict of interest. Betty is especially concerned that, since the PET and E Bar L changed accounting firms in 2020, she no longer receives E Bar L partnership financial information like she received from the original successor co-trustees.

---

[5] The three E Bar L Ranch, LLP partners are the PET, Juanita (Juanita Vero Company), and Matt Erickson (Erickson Family E Bar L, LLC, TCB, LLC). Matt Knox, the E Bar L's corporate representative, is also listed as a director for Juanita's company.

¶7     In September 2021, Betty filed a verified petition for information and removal of Wall as a PET trustee. Betty alleged Wall was operating under a disqualifying conflict of interest as both a PET trustee and E Bar L employee and violated her fiduciary duties by encouraging favorable contracts for E Bar L, including the 2022 lease agreement. Betty, who wanted Wall removed and replaced, named three potential appointees to replace her. Betty also sought disclosure of E Bar L partnership financial records she alleged were necessary to protect her PET interests and prevent what she suspected was a breach of trust by Wall.

¶8     Wall and Stone answered on behalf of the PET and counter-petitioned for declaratory judgment (1) that they could remain as co-trustees; (2) approving and affirming the 2022 PET-E Bar L lease agreement; and (3) defining Betty's rights as a beneficiary and the trustees' obligations as an E Bar L partner. Mary and Spike separately counter-petitioned to deny Betty's request to remove Wall. E Bar L joined in the PET's counter-petition.

¶9     During discovery, Betty filed a motion to compel discovery from E Bar L to remedy incomplete discovery responses. Specifically, Betty sought discovery of E Bar L's partnership tax returns, balance sheets, and QuickBooks files from 2020 to present and its profit-and-loss statements from 2013 to present. E Bar L asserted that this information was confidential and irrelevant to Betty's claims but did not assert than any of the requested information was privileged. Though the E Bar L admitted in discovery that it provided Betty its profit-and-loss statements prior to 2017, the partnership since changed its disclosure policy to stop providing that information to "most non partners." Despite this

7

policy change, the E Bar L also admitted that from 2019 to 2021, Betty "was occasionally shown" profit-and-loss statements by Wall, but the partnership did not "wish to share" this information with outside parties. The court ultimately denied Betty's motion because the information Betty sought was the subject of her petition and entitlement remained in dispute.

¶10 Following discovery in early 2024, the parties began filing motions for summary judgment. Alleging that Wall was operating under a conflict of interest as an E Bar L employee and PET trustee, Betty sought summary judgment that (1) Wall should be removed as PET trustee under § 72-38-706, MCA, and Betty should be able to appoint her successor and that there should be three trustees, not just two; (2) the 2022 PET-E Bar L lease agreement was voidable under § 72-38-802, MCA, due to Wall's conflict of interest; and (3), to protect her PET beneficiary interests and prevent or redress a breach of trust, Betty was entitled to the PET's and E Bar L's financial information under § 72-38-813, MCA.

¶11 Wall and Jones, for the PET, denied that Wall was operating under any conflict of interest and therefore sought summary judgment that (1) Wall was not subject to removal; (2) the 2022 lease agreement was not voidable; and (3) Betty was not entitled to the specific E Bar L partnership information she sought. The E Bar L, Mary, and Spike joined the PET's summary judgment motion. The E Bar L also separately sought summary judgment that (1) its 2022 lease agreement with the PET was valid and enforceable and (2) Betty was not entitled to the E Bar L's confidential financial information. All parties asked for attorney fees.

¶12 After hearing argument in April 2024, the District Court denied Betty summary judgment on all her claims and granted summary judgment to the PET and E Bar L on their claims, except it partially denied summary judgment on the PET's claim to define the scope of the trustees' obligations to Betty. The court determined that the question of what obligations the trustees owed to Betty when acting for the PET as an E Bar L partner was "not ripe for the court's consideration."

¶13 The District Court concluded that Wall was not administering the PET under any conflict of interest. Based on its conclusion there was no conflict, the District Court found no need to remove Wall, allow Betty access to the E Bar L's partnership financial records to investigate mismanagement or a breach of trust, or find the lease voidable. The court also concluded that, although the PET initially had three co-trustees, the family trust instrument did not mandate any number of trustees or authorize Betty to appoint successor trustees. Finally, the court determined all parties were responsible for their costs and attorney fees.

¶14 Betty timely appeals. We will discuss additional facts as necessary below.

## STANDARD OF REVIEW

¶15 We review the grant or denial of summary judgment de novo, applying M. R. Civ. P. 56. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). Summary judgment is "an extreme remedy that should never be substituted for a trial if a material factual controversy exists." *Meloy v. Speedy Auto Glass, Inc.*, 2008 MT 122, ¶ 10, 342 Mont. 530, 182 P.3d 741. "A genuine issue of material fact

is an issue of inconsistent fact, material to the elements of a claim or defense at issue, and not amenable to judgment as a matter of law." *House v. U.S. Bank N.A.*, 2021 MT 45, ¶ 14, 403 Mont. 287, 481 P.3d 820. Whether a genuine issue of material fact exists or whether a party is entitled to judgment as a matter of law are conclusions of law subject to de novo review for correctness. *House*, ¶ 14.

## DISCUSSION

¶16 *1. Did the District Court err in granting summary judgment that Wall's dual role as PET trustee and E Bar L employee did not trigger the § 72-38-802, MCA, conflict presumption, which therefore foreclosed removal or other relief under § 72-38-706 and § 72-38-1001, MCA?*

¶17 Whether a conflict of interest exists is a question of fact, assessed on a case-by-case basis. *See Hendricks v. State*, 2006 MT 22, ¶¶ 13-15, 331 Mont. 47, 128 P.3d 1017 (a fiduciary's conflict "must be proved through a factual showing on the record" (citation omitted)); *accord In re Charles M. Bair Family Trust*, 2008 MT 144, ¶¶ 46-47, 343 Mont. 138, 183 P.3d 61 (a trustee's breach of duty presents a question of fact). Ordinarily, questions of fact are not amenable to summary judgment. *Poole v. Poole*, 2000 MT 117, ¶ 14, 299 Mont. 435, 1 P.3d 936. Questions of fact may only be determined as a matter of law when reasonable minds cannot differ on the issue. *Poole*, ¶ 14; *Meloy*, ¶ 10.

¶18 Montana's Uniform Trust Code prescribes a trustee's duty of loyalty to beneficiaries, including the duty to "administer the trust *solely*" in the beneficiaries' interests. Section 72-38-802(1), MCA (emphasis added). In managing trust assets, income and expenses, and distributions, a trustee "must act with the utmost good faith toward the beneficiary" and may not act in her own interest, or that of a third party. *Wild W. Motors*

10

*v. Lingle*, 224 Mont. 76, 82, 728 P.2d 412, 415-16 (1986) (citations omitted); § 72-38-801, MCA. A conflict between the trustee's fiduciary and personal interests is "presumed" where a trustee enters into a transaction involving management of trust property with an "enterprise in which the trustee . . . has an interest that might affect the trustee's best judgment." Section 72-38-802(3)(d), MCA. Any transaction involving management of trust property "affected by a conflict of interest between the trustee's fiduciary and personal interests is voidable" by an affected beneficiary, except under circumstances not at issue here. Section 72-38-802(2), MCA; *accord* §§ 72-38-706, -1001, MCA.[6]

¶19 A trustee also has a fiduciary duty to "keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." Section 72-38-813(1), MCA (duty to inform and report). Trustees must "promptly respond" to requests for information "reasonably necessary" for the beneficiary "to enforce [her] rights . . . under the trust or to prevent or redress a breach of trust." Section 72-38-813(1), MCA. This information includes an annual "report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets and, if feasible, their respective market values" and "copies of any applicable income, estate, or transfer tax returns relevant to the administration of the trust." Section 72-38-813(3), MCA.

¶20 A "breach of trust" is a violation by the trustee of any duty she owes to the beneficiary. *In re Guardianship & Conservatorship of Elizabeth Saylor*, 2005 MT 236,

---

[6] A contract that is voidable is not void until so decreed by a court. *Grady v. Livingston*, 115 Mont. 47, 56, 141 P.2d 346, 352 (1943).

¶ 16, 328 Mont. 415, 121 P.3d 532 (citing Restatement (Second) of Trusts § 201 (1959)); § 72-38-1001(1), MCA. Therefore, a trustee's conflict of interest or failure to inform and report are breaches of trust and may be grounds for the trustee's removal. For example, § 72-38-706(2)(c), MCA, permits discretionary court removal of a trustee where the trustee "persistent[ly] fail[s] . . . to administer the trust effectively and impartially" and the court concludes removal is in the beneficiaries' best interests. *See also* Restatement (Third) of Trusts § 37 (removal of trustee "for cause"). Removal is also permitted where there has been a "substantial change in circumstances" and removal is in the best interests of all beneficiaries, not inconsistent with the trust's purpose, and a suitable successor trustee is available. Section 72-38-706(2)(d), MCA.

¶21    Section 72-38-706(2)(a), MCA, also permits unqualified removal where a trustee "has committed a serious breach of trust." While not every breach of trust requires removal, a "serious breach of trust" may warrant it, depending on the nature of the breach and especially if the trustee flagrantly or repeatedly fails in her duties. *In re Baird*, 2009 MT 81, ¶ 12, 349 Mont. 501, 204 P.3d 703; Restatement (Third) of Trusts § 37, cmt. e. Uniform Trust Code § 706, upon which § 72-38-706, MCA, is modeled, recognizes that a "particularly appropriate circumstance justifying removal" is the trustee's "serious breach" of her duty to keep the beneficiary reasonably informed and comply with requests for information because "failure to comply with this duty may make it impossible" for beneficiaries to protect their interests and "may also mask more serious violations by the trustee." Uniform Trust Code § 706, cmt. (removal of trustee). In addition to or in lieu of removal, a court may order "appropriate relief," including requiring the trustee to account,

appointing a special fiduciary to administer the trust, and voiding acts of the trustee. Sections 72-38-706(3), -1001, MCA.

¶22 Based on these provisions, the parties here separately sought summary judgment on: (1) Betty's entitlement to E Bar L's financials under § 72-38-813, MCA; (2) voidability of the 2022 PET-E Bar L lease agreement for use of PET land under § 72-38-802, MCA; and (3) Wall's removal and replacement under § 72-38-706, MCA. At the center of these issues is Betty's claim that Wall is administering the PET under a conflict of interest, specifically that Wall secured a "sweetheart deal" for her E Bar L employer when negotiating the 2022 lease agreement to ensure her continued employment and earn a "disproportionately generous" salary increase. More problematically, Wall denied Betty access to the very information necessary to prove her claim that Wall should be removed and the 2022 lease voided because of Wall's conflict of interest.

¶23 At bottom, whether Wall was operating under a conflict of interest was a question of fact that could be resolved on summary judgment only if there was no genuine dispute as to the material facts and reasonable minds could reach but one conclusion. The District Court resolved this fact question in the PET's and E Bar L's favor, finding Wall's employment with the E Bar L did not create a conflict of interest affecting PET management or transactions with the E Bar L. We disagree that this question could be determined on the summary judgment record as a matter of law.

¶24 Here, it is undisputed that Wall is an assistant manager at E Bar L who receives free year-round housing and seasonal meals in addition to compensation. It is also undisputed that Wall has received pay raises and bonuses from her E Bar L employer since becoming

13

a PET trustee. Wall admitted that the E Bar L's continued existence depends on its ability to lease land from the PET. Therefore, Wall's livelihood and financial success is inextricably linked to the success and continued existence of the E Bar L, which ultimately depends on the E Bar L's being able to lease PET land. These circumstances are sufficient to raise a factual issue that Wall's best judgment might be affected by her personal interests in the E Bar L. *See* § 72-38-802(3)(d), MCA (a transaction is presumed affected by a trustee's conflict of fiduciary and personal interests if made with an entity in which the trustee "has an interest that might affect the trustee's best judgment").

¶25 The E Bar L and PET insist that Wall is not conflicted by any personal interest in the E Bar L, asserting that she "holds no ownership interest" in E Bar L, "is not benefiting personally from trust transactions," and "has never exercised her fiduciary role to [E Bar L's] benefit or the [PET's] detriment." First, § 72-38-802(3)(d), MCA, does not require the trustee to own an interest in the entity on the other side of the trust transaction for a conflict of interest to arise. Second, the other two assertions remain disputed fact questions that cannot be resolved without insight into E Bar L's financial relationship with Wall and the extent to which her conflict may have affected PET-E Bar L negotiated transactions.

¶26 Based on the Rule 56 record, the undisputed facts regarding Wall's employment, compensation, housing, supervisory relationships, and E Bar L's dependence on PET-land leasing, at minimum, create a genuine issue of material fact whether § 72-38-802(3)(d), MCA, is implicated and whether PET-E Bar L transactions were "affected by" a conflict. Reasonable minds could conclude that Wall's participation as a trustee in transactions with the E Bar L involving PET property renders those transactions presumptively affected by

14

a conflict of interest.[7]  Therefore, the District Court erred in resolving as a matter of law against Betty the question of whether Wall's E Bar L employment while serving as a PET trustee created a conflict of interest.  This erroneous determination now calls into question the correctness of the District Court's resolution on summary judgment of the following other issues:  the PET-E Bar L's lease agreement was not voidable and was instead valid and enforceable; Betty was not entitled to E Bar L financial information; and Wall was not subject to removal as trustee.

¶27    Because there are genuine issues of material fact as to whether Wall's employment by E Bar L during negotiation and administration of the 2022 lease triggers the statutory presumption of a conflict under § 72-38-802(3)(d), MCA, the District Court erred in entering summary judgment for the trustees on conflict-based claims.  We therefore vacate the contrary legal conclusions and remand.  On remand, the District Court must apply the correct § 72-38-802, MCA, framework to a fully developed record, recognizing that Wall's dual roles plausibly implicate the statutory presumption and that any remaining factual disputes cannot be resolved on summary judgment.  The court must also evaluate whether Wall administered the PET "solely in the interests of the beneficiaries," assess any taint on

---

[7] We find the PET's and E Bar L's arguments on this point unpersuasive.  First, § 72-38-802, MCA, does not provide that unanimity among co-trustees in decision-making cures any single trustee's conflict of interest.  Second, the plain language of § 72-38-802(3)(d), MCA, requires proof only that a trustee is transacting for the trust with an entity in which she has a personal interest that "*might* affect" her best judgment, not that the conflict in fact affected her judgment in that transaction, for the *presumption* of a conflict to arise.  Because any transaction affected by a trustee conflict of interest is "voidable" under § 72-38-802(1), MCA, the nature, extent, and effect of the trustee's conflict of interest are more properly considered when analyzing whether the subject transaction should be set aside.

15

the lease, and consider remedies up to and including removal or appointment of a special fiduciary. *See* §§ 72-38-802(1), (3), -706(2)-(3), -1001, MCA.

¶28 *2. Did the District Court err in granting summary judgment that the 2022 PET-E Bar L land-use lease was not "affected by" a conflict and therefore not voidable under § 72-38-802(2), MCA?*

¶29 The erroneous resolution of Wall's conflict of interest raises fact questions regarding the reasonableness and fairness of the 2022 PET-E Bar L lease agreement, which must be determined upon considering Wall's dual roles as PET trustee and E Bar L employee. After operating under 1-year leases since 2015, all three PET co-trustees and the E Bar L negotiated a new lease for use of the 4,000-acre PET land in 2022.[8] The lease is for a 5-year term and subject to automatic renewal for two consecutive 5-year terms unless a party declines to renew. The initial rent is $50,000 annually, with increases annually based on the U.S. Consumer Price Index. The lease grants E Bar L exclusive use of the PET land, subject to other third-party leases and the PET's timber harvesting rights. For capital improvements, the lease provides that the E Bar L and PET "shall . . . agree upon which party will bear the cost" and whether the E Bar L will be entitled to reimbursement for any remaining value of the improvement(s) at the end of the lease term and what that amount will be.[9] Additionally, the PET and E Bar L must annually negotiate and implement an operating plan to establish rights and responsibilities of the parties, costs,

---

[8] The PET entered the lease before Hirschenberger died.

[9] The lease separately provides that the E Bar L must maintain the PET land "in good repair," including "repair and maintenance of any fencing [the E Bar L] deems necessary to protect the Property for [the E Bar L's] use."

16

and payment of the same, including capital improvements, the employment of a Land Steward Manager, results of annual reviews by interested third parties (including TNC), and the annual grazing schedule. The Land Steward Manager's primary responsibility is "to ensure the [E Bar L] meets its performance obligations" under the lease and annual operating plan.

¶30 By its own terms, the lease term is historically longer than any lease of record in this case—three times longer. Also, the $50,000 annual rent is substantially lower than historical rents, which were as high as $125,000 in 2020, and that historically low rent with small incremental annual increases is locked in for up to 15 years.[10] Finally, the lease provides for additional, embedded decision-making between the PET and E Bar L, and therefore Wall and her employer, regarding who will fund capital improvements, whether the E Bar L will be reimbursed for a portion of those expenditures at the end of the lease term, and who will pay for the Land Steward Manager and how he or she will be directed, under the operating plan, to ensure the E Bar L performs under the lease.

¶31 Because the conflict-presumption question and the reasonableness of the 2022 lease are intertwined fact questions on this record, summary judgment on the reasonableness of the lease was improper. The parties presented competing evidence bearing on lease term length and structure, the fee level relative to historical rents, CPI escalators, capital-improvement burdens, operating-plan cost allocations, and the Land Steward

---

[10] According to Betty, the E Bar L's annual rent increased from $91,400 to $125,000 from 2017 through 2020. Original co-trustee Lindbergh testified at deposition that he was surprised to learn the 2022 lease was for $50,000 annually because that was the rent under the 2010 5-year lease agreement.

Manager's role—matters a trier of fact must assess under § 72-38-802(2), MCA. Whether Wall had a conflict that operated to the E Bar L's benefit and PET's detriment, if any, presents a genuine issue of fact material to whether the lease was valid or should be set aside and precluded summary judgment on this issue.[11] The District Court erred in deciding that, as a matter of law, the 2022 PET-E Bar L lease agreement was valid and should not be set aside.

¶32    We do not decide whether the lease is voidable; we hold only that disputed material facts—including those tied to Wall's roles and to lease "fairness"—preclude summary judgment for the PET and E Bar L and require remand for fact-finding under the correct legal standard.

¶33    *3. Did the District Court err in granting summary judgment that Betty was not entitled to E Bar L financial information reasonably necessary to enforce her beneficiary rights and to test conflicted transactions under § 72-38-813, MCA, notwithstanding available protective measures under M. R. Civ. P. 26(c)?*

¶34    Betty contends she is entitled to E Bar L's partnership financials for two purposes: to ascertain the extent of Wall's conflict of interest material to her claim for removal under § 72-38-706, MCA, and to ascertain the reasonableness of the 2022 lease agreement presumed to be affected by Wall's conflict of interest under § 72-38-802(3)(d), MCA, material to her claim the lease should be voided.[12] E Bar L counters that Betty received all

_____

[11] *See, e.g.*, *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 136, 345 Mont. 12, 192 P.3d 186 (reasonableness is generally a fact question not amenable to summary judgment).

[12] Betty also argued the information was necessary for tax preparation, but it is undisputed that she prepared and filed her tax returns without this information.

18

the information necessary to protect her beneficiary interest and insists the specific information Betty wants—the partnership's tax returns, profit-and-loss statements, balance sheets, and QuickBooks files—are confidential and not subject to disclosure to anyone outside the partnership, regardless of the PET's status as a partner.[13]

¶35 Even if, arguendo, Betty could not access partnership financials unless she made some assertion that her income distribution was inadequate or unfair under the PET,[14] protecting beneficiary interests is not the only permissible grounds for information under § 72-38-813(1), MCA. That section also imposes a duty upon trustees to "promptly respond to a qualified beneficiary's request for information that is reasonably necessary to enable the qualified beneficiary *to enforce the rights* of the qualified beneficiary under the trust *or to prevent or redress a breach of trust*." (Emphasis added.) True, the PET's partnership K-1 discloses its distributive share, which ordinarily would be sufficient for Betty to protect her distributive interest, but it is only a piece of the partnership's overall financial picture and provides no insight into Wall's conflict or how it affected or will affect PET-E Bar L transactions.

---

[13] We reject E Bar L's claim that Betty might use the partnership's financial information in an improper manner, as the record shows she offered to enter a confidentiality agreement regarding this information and the E Bar L declined.

[14] The District Court concluded as much regarding Betty's inability to connect E Bar L's partnership financials to her beneficiary interests under the PET in discretionary income distributions and living in the Potter house. The court did the same regarding the 2022 lease agreement, noting Betty failed to connect the "reasonableness" of the lease to her discretionary income distributions.

¶36 First, we cannot read the duty to inform and report so narrowly as to require a beneficiary to prove a breach of trust before being entitled to information reasonably necessary to *prevent* a breach of trust, because that would render the beneficiary's right to information under § 72-38-813, MCA, meaningless. The Distrct Court determined that Betty was not entitled to use § 72-38-813 for a "fishing expedition." But commentary on the duty to inform and report highlights its importance: "failure to comply with this duty may . . . *mask* more serious violations by the trustee." Uniform Trust Code § 706, cmt. (emphasis added). Accordingly, when a trustee conflict of interest exists, "the conduct of the trustee in the administration of the trust will be subject to especially careful scrutiny." Restatement (Third) of Trusts § 37, cmt. f(1).

¶37 Second, though the PET and E Bar L are correct that entity financial information is ordinarily confidential, we are not convinced it is outside a beneficiary's reach in all circumstances. The comments to § 72-38-813, MCA, shed some light on a trustee's duty to disclose confidential information, noting that the duty is "excused only if compliance is unreasonable under the circumstances," including if disclosure "is forbidden by other law" or "would be seriously detrimental" to the beneficiaries' interests. However, within the bounds of this "reasonableness limit," it is generally up to the beneficiary to determine what information is relevant to protect her interests.

¶38 Former PET-E Bar L accountant Baiba Eastlick testified that Betty would not ordinarily need access to anything beyond the PET's K-1 to file her tax returns. Eastlick explained, however, that the only way to reconcile an unusual or discrepant K-1 would be with access to the partnership's accounting—specifically, QuickBooks income statements

20

and balance sheets. While Betty received an "unusual" K-1 in 2020, she was nonetheless able to file her returns without access to partnership financials. But, beyond tax purposes, Eastlick also explained that E Bar L financials were necessary to square other accounting discrepancies, such as an E Bar L "side agreement" to pay Stone's contracting company $38,000 for hay that did not appear in PET accounting. Eastlick testified that when she raised concerns about questionable accounting practices with the new co-trustees, she was "completely blockaded" and denied access to information once freely provided by the original successor trustees. According to Eastlick, the co-trustees' denial of E Bar L partnership information was "a big red flag."

¶39 Conversely, the PET and E Bar L assert that disclosure of the partnership's financials is prohibited by law.[15] They cite 26 U.S.C. § 6103 and § 15-31-511(1), MCA, which generally provide that tax return information is confidential, except in limited circumstances.[16] They also contend that disclosure of partnership financials to non-partners would run afoul of fiduciary duties among partners. "[T]he only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care" as set forth in § 35-10-405, MCA. A partner's duty of loyalty is to account and hold as trustee all partnership property and to avoid conflicts of interest and competing

---

[15] And is inequitable under § 72-38-106, MCA, which provides that "[t]he common law of trusts and principles of equity supplement this chapter except to the extent modified by this chapter or another statute of this state."

[16] Federal tax law allows disclosure where a party seeking tax information has a "material interest" in it. 26 U.S.C. § 6103(a), (e)(1)(C), (7), (10) (1954). Montana law provides an exception where disclosure is court-ordered or otherwise permitted by law. Section 15-31-511(1), MCA.

with the partnership; the duty of care "is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." Section 35-10-405(2), (4), MCA.[17] We do not read these statutes as an absolute bar to the otherwise broad information sharing requirements of § 72-38-813, MCA. Instead, the court must carefully balance the beneficiary's right to know and discover facts material to preventing or redressing a breach of trust with the confidential or privileged nature of that information.

¶40    M. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," subject to limitation by the court, and that "[t]he information sought need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Accord Patterson v. State*, 2002 MT 97, ¶ 15, 309 Mont. 381, 46 P.3d 642 ("[t]he rules of civil procedure are premised upon a policy of liberal and broad discovery"). A party that "withholds information otherwise discoverable by claiming that the information is privileged . . . *must* (i) expressly make the claim; *and* (ii) describe the nature of the documents, communications, or things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties

---

[17] *See also* § 35-10-401(6), MCA ("[e]ach partner has equal rights in the management and conduct of the partnership business"); § 35-10-402, MCA ("[a] partnership shall provide partners and their agents and attorneys access to its books and records"; "[t]he right of access provides the opportunity to inspect and copy books and records during ordinary business hours" and subject to "a reasonable charge"); § 35-10-403, MCA ("[e]ach partner and the partnership, on demand, shall furnish to a partner . . . to the extent just and reasonable, complete and accurate information concerning the partnership"); § 35-10-408, MCA ("[a] partner is liable to the partnership for a breach of the partnership agreement if there is a violation of a duty to the partnership that causes harm to the partnership").

to assess the claim." M. R. Civ. P. 26(b)(6)(A) (emphasis added). From this privilege log, the party seeking information may move the court for in camera review. After in camera review, any privileged information may be subject to a protective order under M. R. Civ. P. 26(c). In camera review protects both parties' interests while preserving liberal discovery principles. *Accord State v. George Burns*, 253 Mont. 37, 39, 830 P.2d 1318, 1319-20 (1992) (the purpose of in camera review "is to balance the privacy interests of the parties and the need to know" and "effectively offer protection to both parties by avoiding needless exposure of potentially harmful information"); *Krakauer v. State*, 2016 MT 230, ¶¶ 39-40, 384 Mont. 527, 381 P.3d 524 ("in camera review is particularly appropriate when the interests of third parties are involved").

¶41 The Rule 56 record here shows that E Bar L's financials were relevant to Betty's claim for Wall's removal under § 72-38-706, MCA, and the PET's and E Bar L's claim that the 2022 lease agreement was valid and enforceable under § 72-38-802, MCA. Trustee Stone and original trustee Goetz testified that what the E Bar L could afford to pay—based on its current and projected seasonal income and expenses—was historically a determinative factor in the "fairness" of the land-use lease agreements, making the partnership's profit-and-loss statements relevant for that purpose. Also, the lease terms require the PET and E Bar L to negotiate an annual operating plan, which contemplates spending by both parties. According to Paraic Neibergs, an appraiser for the E Bar L, "which entity is burdened by" obligations under the lease's operating plan is the better measure of overall fairness. If Betty is only able to see what the PET pays for, and not the

23

E Bar L, she is unable to ascertain whether Wall is in fact negotiating transactions, like the 2022 lease and annual operating agreements, to the E Bar L's benefit and PET's detriment.

¶42 The District Court denied Betty's motion to compel discovery of the disputed E Bar L partnership financials because the question of her entitlement to the information under § 72-38-813, MCA, was the subject of her petition. After argument, the court concluded that the PET trustees had no duty under § 72-38-813, MCA, to provide that information. We agree that Betty did not need this information for tax purposes, because it was undisputed she prepared and filed her taxes without it. We also agree that Betty did not need this information to protect her discretionary income distribution, because she failed to allege that her distribution was insufficient or unfair under the trust terms. However, we disagree that Betty was not entitled to this information "to prevent or redress" Wall's "breach of trust." Because the court decided as a matter of law that Wall was not operating under a conflict of interest, it did not consider Betty's information request in context of preventing or redressing Wall's conflict, authorized grounds for disclosure under § 72-38-813, MCA.

¶43 We hold that Betty is entitled—under § 72-38-813(1)-(3), MCA, and M. R. Civ. P. 26—to targeted discovery "reasonably necessary" to enforce her rights and to prevent or redress a breach of trust, subject to appropriate confidentiality protections. The District Court must require a Rule 26(b)(6) privilege log for any withheld items and may manage production using in camera review and a protective order under Rule 26(c) as needed to balance trust-administration transparency with any legitimate confidentiality concerns.

24

¶44 "Reasonableness" and "fairness" of the 2022 lease remain fact questions that the court cannot resolve on summary judgment without this discovery. Because the District Court resolved entitlement to E Bar L's financial information categorically and prematurely, we reverse and remand with instructions to manage scope, sequencing, and protections (including privilege logs and in camera review) consistent with this Opinion.

¶45 4. *Did the District Court err in granting summary judgment that Wall was not subject to removal as a PET trustee?*

¶46 Betty sought Wall's removal as trustee under § 72-38-706(2)(a), (c), and (d), MCA, for an alleged "serious breach of trust"; Wall's administering the PET ineffectively and impartially; and a substantial change in circumstances—Wall's irreconcilable animosity toward Betty—that made her removal in the beneficiaries' best interests. The court denied removal on all three grounds based, in part, on its determination that Wall was not administering the PET or PET property under a conflict of interest. As previously explained, the court was incorrect that Wall's dual role as PET trustee and E Bar L employee did not create the presumption of a conflict of interest that "might affect" her best judgment in negotiating and administering trust transactions.

¶47 Accordingly, the District Court must reconsider whether Wall's conflict (1) constituted a "serious breach of trust"; (2) interfered with her ability to administer the PET effectively and impartially; and (3), considering her deteriorating relationship with a PET beneficiary, would make Wall's removal in the beneficiaries' interests. As with the 2022 lease agreement, the District Court cannot resolve these fact questions on summary judgment without discovery of E Bar L's financial information "reasonably necessary" to

25

test Wall's conflict and the nature and extent of its effects on her administration of trust property.

¶48   5. *Did the District Court err in granting summary judgment that the family trust instrument did not mandate three PET co-trustees or permit Betty, a beneficiary, to appoint successor trustees?*

¶49   As for the District Court's decision on summary judgment that the family trust instrument, by its express terms, does not mandate three PET co-trustees, we affirm. It is undisputed that the trust instrument does not expressly require three PET trustees. While the trust instrument expressly provided for Lindbergh, Masar, and Goetz to be appointed as original successor trustees, it does not mandate that three co-trustees administer the PET. Likewise, we affirm the court's determination that the family trust instrument, by its express terms, does not permit Betty to appoint any successor PET trustees. The trust instrument specifically provides that Betty is a beneficiary of the PET, not a trustee, and PET trustees have sole discretion to appoint their successors.

## CONCLUSION

¶50   We hold that the District Court erred in granting summary judgment on four of the five issues identified in this Opinion.

¶51   First, the court erred when it concluded that Wall's dual role as PET trustee and E Bar L employee did not trigger the statutory presumption of a conflict of interest under § 72-38-802(3)(d), MCA. That erroneous conclusion led to the court's determination that Wall was not subject to removal under § 72-38-706, MCA.

¶52   Second, the court erred in affirming as a matter of law the 2022 PET-E Bar L lease agreement. Because the lease was presumptively affected by Wall's conflict of interest

26

under § 72-38-802(2)-(3), MCA, and genuine issues of material fact exist as to the reasonableness and fairness of the lease, summary judgment was improper.

¶53 Third, the court erred in concluding that Betty was not entitled to obtain specific E Bar L partnership financials. Under § 72-38-813, MCA, and consistent with civil-discovery principles, Betty is entitled to information reasonably necessary to prevent or redress a breach of trust by a conflicted trustee.

¶54 Fourth, the court erred in concluding that Wall was not subject to removal as a PET trustee pursuant to § 72-38-706, MCA. Without discovery to test whether Wall's conflict triggered a serious breach of trust or interfered with Wall's duty to administer the PET effectively and impartially in the beneficiaries' interests, summary judgment was premature.

¶55 Fifth, the court correctly granted summary judgment that the family trust instrument does not mandate three PET co-trustees or permit Betty, a beneficiary, to appoint any successor PET trustees.

¶56 Accordingly, we remand with instructions that, absent a M. R. Civ. P. 26(c) protective order, E Bar L must produce the requested partnership information—specifically, its tax returns, balance sheets, and QuickBooks files from 2020 to the present, and its profit-and-loss statements from 2013 to the present. The District Court shall conduct further proceedings on Betty's claim for Wall's removal under § 72-38-706(2), MCA, and on her claim to set aside the conflict-affected 2022 lease agreement under § 72-38-802, MCA.

¶57    On remand, the District Court shall order targeted production reasonably necessary to test conflict, fairness, and trust administration, including:  (1) E Bar L tax returns, balance sheets, and QuickBooks files from 2020 to present; and (2) profit-and-loss statements from 2013 to present.  For any documents withheld as attorney-client or work-product protected (including communications directing that financial records are not to be provided), the withholding party shall serve a Rule 26(b)(6) log sufficient to permit adjudication.

¶58    Affirmed in part, reversed in part, and remanded for further proceedings.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA